[No. 5739.]

THE PEOPLE OF THE STATE OF CALIFORNIA, BY JOHN L. LOVE, ATTORNEY-GENERAL, AT THE RELATION OF WILLIAM ALVORD, *v*. ANDREW J. POPE AND W. C. TALBOT.

DEDICATION OF EAST STREET.—East Street, in San Francisco, between Market and Folsom Streets, has been duly dedicated as a public street.
RIGHT TO OBSTRUCT A STREET.—No one can acquire by adverse occupation, as against the public, the right to obstruct a street dedicated to public use, and thus prevent the use of it as a public highway.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The action was commenced in 1872, at which time the defendants were using East Street, in San Francisco, for storage of lumber; and the action is to abate the nuisance caused thereby. At the trial the plaintiff introduced the following evidence: Brigadier-General S. W. Kearny's grant; the plan or map of San Francisco, compiled by Wm. M. Eddy, surveyor; a law of the State of California, entitled "An Act to provide for the disposition of certain property of the State of California," passed April 26th, 1858; an Act entitled "An Act to provide for the sale of certain property of the State of California within the water line front of the City of San Francisco"; Ordinance No. 537 of the City of San Francisco, passed February 25th, 1854; an Act of the Legislature, approved April 24th, 1863, entitled "An Act to provide for the improvement and protection of the wharves, docks, and water front"; also an Act approved March 5th, 1864, amendatory of and supplemental to said last mentioned Act.

Plaintiff read in evidence the following stipulation:

"I.   That on the 10th day of March, 1847, Brigadier-General S. W. Kearny, then Governor of California, executed to the City of San Francisco the following document:

"'I, Brigadier-General S. W. Kearny, Governor of California, by virtue of authority in me vested by the President of the United States of America, do hereby grant, convey, and release unto the Town of San Francisco, the people or corporate authorities thereof, all the right, title, and interest of the Government of the United States, and of the Territory of California, in and to the beach and water lots on the east front of said Town of San Francisco, included between the points known as the 'Rincon' and Fort Montgomery, excepting such lots as may be selected for the use of the General Government by the senior officers of the army and navy now there; provided, the said ground hereby ceded shall be divided into lots and sold by public auction to the highest bidders, after three months' notice previously given.   The proceeds of said sale to be for the benefit of the Town of San Francisco.

"'Given at Monterey, Capital of California, this 10th day of March, 1847, and in the seventy-first year of the independence of the United States.          (Signed)

"'S. W. KEARNY,

"'Brigadier-General and Governor of California.'

"It is not intended to admit that General Kearny had the power to make the foregoing grant, or that it conveyed any interest to the land granted to the City of San Francisco.

"II.   That the Town Council or Ayuntamiento of San Francisco caused a map of the City of San Francisco to be made by Wm. M. Eddy, City Surveyor, which was completed in January, 1850, and was at that date deposited in the office of the City Surveyor of said city, where it has remained since said date, and is one of the official maps of said city, and one of the maps constituting the records of the Surveyor's office, and bears the following title: 'Official Map of San Francisco, compiled from official surveys, with all the extensions ordered by the Ayuntamiento, made by Wm. M. Eddy, Surveyor of San Francisco, 1850.'

" Second—That upon said map and within the bounds of the said Kearny Grant, or what is known as the San Francisco beach and water lots, lots and blocks by numbers and streets by names are marked out and designated, and among the streets laid down and designated thereon the most eastern is called and designated by name as East Street, and is represented thereon as extending along the east water front of said city from Folsom Street to Market Street, and in width one hundred and thirty-seven and one-half feet.

" Third—That the said beach and water lots, in the year 1850, were sold by order of the Town Council or Ayuntamiento of San Francisco, as laid down and designated on said map, and according to the lots and numbers thereof, and by streets as thereon marked out and designated.

" Fourth—That among the lots so sold were the lots fronting on what is marked and designated on said map as East Street, and between Market Street and Folsom Street, and which said sales were afterwards ratified by an Act of the Legislature of California, passed March 26th, 1851.

" III. First—That a map bearing the following title, 'Official Map of the City of San Francisco, full and complete to the present date, compiled by Wm. M. Eddy, City Surveyor, January 15th, 1851,' now in the Surveyor's office of the City and County of San Francisco, is one of the maps of said office, and is one of the maps constituting the records of said office. That upon this map is a certificate in the words:

" ' We certify that this map has the boundary line of the beach and water property described in sec. 1 of " An Act to provide for the disposition of certain property of the State of California, approved March 26th, 1851," and is duly marked red. Done in accordance with the fifth section of said act.

" ' Witness our hands and the private seal of the Mayor, there being no corporate seal, the 4th day of April, 1851.

" ' JOHN W. GEARY,

" ' Mayor of San Francisco.

" ' WM. M. EDDY,

" ' City Surveyor of San Francisco.'

" ' Second—That the foregoing map is the one which was deposited in the office of the Surveyor of the City of San Francisco, under 'An Act to provide for the disposition of certain property of the State of California,' passed March 26th, 1851. That John W. Geary was Mayor of said city and Wm. M. Eddy was the City Surveyor of said city at the date of the above certificate, and that said map was deposited in said office on the 4th day of April, 1851.

" Third—That a triplicate of said map was also deposited in the office of the Secretary of State, and also in the office of the Surveyor-General of said State of California, within the time required by the fifth section of said act of the Legislature.

" Fourth—That the red line, as exhibited and drawn upon said map, correctly delineates and denotes the boundaries of the beach and water property of the City of San Francisco, as directed by the same act of the Legislature. That upon said map, and within the boundaries of said beach and water lots, lots and blocks by numbers, and streets by name, are marked out and designated.

" Fifth—That the names of the streets, as marked on said map, passing north and south through the space or water property within the red lines south of Market Street, are first, Fremont; next east of it is Beale; next east, Maine; next east, Spear; next east, Stewart; and next east, East Street; East Street being on the water front south of Market Street, and represented thereon as one hundred and thirty-seven and one-half (137½) feet in width. The streets marked on said map, as running at right angles with the streets just named, are Market, Mission, Howard, and Folsom Streets.

" IV. First—That a map now on file in the office of the Recorder of the City and County of San Francisco, entitled ' Official Map of the City of San Francisco,' compiled by Wm. M. Eddy, City Surveyor, and marked ' Filed January 15th, 1851, by James O'Grady, Deputy County Recorder,' is the map or plat referred to in sec. 1 of the said Act of the Legislature of the State of California, hereinbefore mentioned, passed March 26th, 1851.

" Second—That upon this map East Street is marked and laid

out as hereinbefore described on the maps referred to in subdivisions II and III of this stipulation.

" V.   First — That Levi Hermance, Joseph Hopkins, and John L. Love were duly appointed Commissioners under an Act entitled 'An Act to provide for the sale of the interest of the State of California in the property within the water-line front of the City of San Francisco,' as defined in and by the act entitled 'An Act to provide for the disposition of certain property of the State of California, passed March 26th, 1851, passed May 18th, 1853.'

" Second—That thereafter said Commissioners, acting in behalf of the State, did sell at public auction the interests of the State in said beach and water property, by lots and streets, as laid down on the official map of said city in this stipulation mentioned, and among others, sold the interest of said State in the lots fronting on the street marked ' East Street,' on said maps, located between Market Street and Folsom Street, and the deeds of conveyance, delivered by the Commissioners to the purchasers, described said lots by their numbers, and also gave East Street as one of the calls or boundaries in the description.

" VI.   That after the passage of said Act of the Legislature entitled 'An Act to provide for the disposition of certain property of the State of California,' passed March 26th, 1851, to wit, on the 5th day of April, A. D. 1853, the Board of Aldermen and Board of Assistant Aldermen of the City of San Francisco passed a certain ordinance, which was that day approved by the Mayor of said city, entitled ' Ordinance No. 326,' accepting the Act of the State of California, passed March 26th, 1851, entitled 'An Act to provide for the disposition of certain property of the State of California.'

" VII.   That after the passage of said Act of the Legislature, entitled " An Act to provide for the disposition of certain property of the State of California," passed March 26th, 1851, to wit, on the 27th day of June, 1856, the Board of Aldermen and the Board of Assistant Aldermen of the City of San Francisco passed a certain ordinance, which was that day approved by the Mayor of said city, entitled ' Ordinance No. 982,' declaring East Street open from Folsom Street to Clay

Street, wherein it was provided that East Street from Folsom Street to Clay Street, as laid down on the Official Map, ' be and is hereby declared open, and dedicated as a public street.'

" VIII. That a map bearing the following title, ' Official Map of the City and County of San Francisco, prepared by Wm. P. Humphreys, City and County Surveyor, 1870, as per Order 966 of the Board of Supervisors, approved October 25th, 1870,' is deposited in the office of the City and County Surveyor of San Francisco, and is one of the maps of said City and County, and one of the maps constituting the records of said office. That upon this map, among other streets, a street is exhibited marked East Street, on the east water front of said city, and extends from Market Street to Folsom Street, in width one hundred and fifty (150) feet. Its location on this map is the same in all respects (except as to width) as upon the other maps in this stipulation mentioned."

The Court overruled the objection to each of the said instruments, to which defendant duly excepted.

Andrew J. Pope testified for defendants: " I am one of the defendants, and know the premises since within the year 1850. The defendants own the water lots west of and abutting on the premises in controversy, to wit; lots six hundred and fifty-three and six hundred and fifty-four. We piled and capped and planked the premises in controversy in 1854, and since then used the same continuously as a lumber yard, exclusively claiming the same in our right as against all the world. What is claimed as the west half of East Street was never opened for use by the public. Defendant's possession was never interrupted. The bulkhead is built in front of the lots owned by defendants, except the last lot, which it does not quite cover. Defendants have lumber piled all along and around there. It is all covered, and said lumber is piled to a height above the level of the bulkhead, as it is constructed ten or fifteen feet high. Do n't know that we actually took possession by piling of the premises described in the complaint before 1864. Think that the piling was confined to the water lots up to 1864. In 1864, at the time the lease from the State Harbor Commissioners was signed, we occupied East Street with a wharf, which

was built at different times, from 1854 to 1864, and is on a level with the grade of the bulkhead. The defendants did not occupy the whole space until 1864. There was a slip left open where East Street is—where they hauled the vessels in. There has been considerable piling done since 1864, in repairing the wharf."

It was admitted by the defendants that there was such a place as East Street, between Market and Folsom Streets, and that the premises described in the complaint are within the limits of such street. It was admitted by the parties that the defendants were, at the time of the commencement of said cause, and still are, in possession of the premises described in the complaint, and using the same as a lumber yard, with piles of lumber thereon.

The foregoing was all the evidence given upon the trial of the action, and thereupon the defendants asked the Court to hold and decide that they had shown a title to the premises which in the complaint were averred to be the property of the plaintiffs by virtue of an adverse, continuous, and exclusive possession as against the State of California, as against the City and County of San Francisco, and against all the world, and had also shown a right to the relief prayed for in the answer.

The Court refused so to hold and decide, to which ruling and decision defendants duly excepted. The plaintiff had judgment, and the defendants appealed.

*Wm. H. Patterson, Newhall, Carson & Phelan,* and *E. B. & J. W. Mastick,* for Appellants.

The defendants own, by title acquired from the State, water lots six hundred and fifty-three and six hundred and fifty-four, abutting on the west line of the so-called East Street, which line was the easterly boundary of said water lots.

East Street, or rather the western half thereof, was never opened by any public authority, and was never used by the public; but from 1854 down to the filing of the complaint herein, January 23rd, 1872, was exclusively and adversely used by the defendants, continuously during said period, as a lumber

yard, on which they piled lumber unladen from sea-going vessels which brought the same thereto from Oregon, Humboldt, and other places by water.

Such user, coupled with the act granting the water lots described in the Acts of 1851, p. 307, chap. 40, vested in defendants the right to continue to use East Street, as aforesaid, until A. D. 1950. Said water lots were granted for commercial purposes and for private use, and until the expiration of ninety-nine years from March 26th, 1851, the State has no interest in the use of said water lots, and consequently, by force of the Statute of Limitations, has no use nor right to the use or control of so-called East Street, it having dedicated East Street to the use of the City of San Francisco, and the defendants having acquired title thereto as against said city and county, by ten years adverse possession. The adverse possession by defendants gave them title. (*Bird* v. *Lisbros,* 9 Cal. 1; *Coryell* v. *Cain,* 16 Cal. 572; *Arrington* v. *Liscom,* 34 Cal. 365; *McManus* v. *Sullivan,* 48 Cal. 7; *Knight* v. *Heaton,* 22 Vt. 7.)

"If land within the surveyed limits of a public highway be inclosed by an individual and occupied by him constantly for more than twenty years, under a claim of right, he will acquire a prescriptive right to the land so occupied as against the public, and can maintain trespass against the selectmen of the town who remove his fence to the original line of the highway." (Washburn's Digest, 480.)

In the case last above, counsel for the defendant seems to have anticipated this Court in *Hoadley* v. *The City,* by arguing —page 482—that the Statute of Limitations would not run because the premises in question had been dedicated to public use, but Judge Redfield held that non-user by the public and the constant use by the plaintiff, under a claim of right, is sufficient to establish a prescriptive right, citing *Moore* v. *Ransom,* 3 Barn. & C. 332; Dowling & R. 234; Gale & Whateley on Easements, 256. And in concluding the opinion, he said: "The Statute of Limitations now in express terms providing that the State shall not be exempt from its operation, we see no good reason why one may not set up prescriptive and presumptive rights against the public, the same as against individuals.

And there is perhaps no good reason why such prescriptions should not apply as well against the public as in their favor."

The same doctrine is maintained in all States that have Statutes of Limitation running against. the public. (*Beardsley* v. *French*, 7 Conn. 125; *Commissioners etc.* v. *Laylor*, 2 Bay, S. C. 282; *Fox* v. *Hart*, 11 Ohio, 444; 8 B. Mon. 232, 259.

In the latter case the Court says: "The right of the public in property dedicated to public uses may be lost by an adverse possession for twenty years." (Angell on Highways, sec. 323.)

*Attorney-General Hamilton* and *W. C. Burnett*, City and County Attorney, for Respondent.

1. The Statute of Limitations will not avail the appellants. (*San Francisco* v. *Sullivan et al.* 50 Cal. 603; *Hoadley* v. *San Francisco*, 50 Cal. 265; *Sawyer* v. *San Francisco*, 50 Cal. 370; *Schulte* v. *N, P. Transportation Co.* 50 Cal. 592; *Weber* v. *The Board of State Harbor Commissioners*, 18 Wall. 57.) Unless the public may take possession, no public improvement of a street can be made; and possession in a private person would be a perpetual injunction against such improvements.

The lease mentioned in the case of *Pope & Talbot* v. *San Francisco et al.*, on argument with this case, and submitted on the same trial and evidence with this, is a lease from the Board of State Harbor Commissioners to the appellants of the easterly half of East Street, directly adjoining upon the east the premises mentioned in the complaint; whereby they admitted the existence of East Street.

2. The premises designated as East Street have been dedicated to public use. In "An Act to provide for the disposition of certain property of the State of California," passed March 26th, 1851, (Statutes 1851, p. 307) see mention made of East Street, in sec. 1 thereof, in giving boundaries or lines of the San Francisco beach or water lot property. By that act the beach and water lot property was granted to the city for ninety-nine years. It is a familiar principle that where the sovereign, by deed or grant, bounds the property conveyed on a street as such, that act is a dedication of that street on the part

of the grantor. (Angell on Highways, sec. 149; *People* v. *Lambier*, Denio, 9, 19; *Wyman* v. *Mayor*, 11 Wend. 486; *Matter of Seventeenth Street*, 1 Wend. 262; *Matter of Lewis Street*, 2 Wend. 472, 474–5; *Matter of Thirty-second Street*, 19 Wend. 128; *Matter of Twenty-ninth Street*, 1 Hill, 189; *Hannibal* v. *Draper*, 15 Mo. 639; *Vick* v. *Vicksburg*, 1 How. Miss. 379; *Jersey City* v. *Morris Canal Co.* 1 Beasl. 547.) That act of dedication by the State was adopted in all its parts, without any reservation whatever, and thereby a dedication made by and on the part of the city itself, by virtue of an Ordinance, numbered 326, approved April 5th, 1853. (See volume of " Ordinances and Resolutions," published 1853–4, p. 50.) And " An Act to provide for the sale of the interest of the State of California in the property within the water-line front of the City of San Francisco, as defined in and by the Act entitled ʻ An Act to provide for the disposition of certain property of the State of California,ʼ " passed March 26th, 1851, approved May 18th, 1853, whereby the official map of the city was recognized and approved with reference to the water-lot property. (Statutes of 1853, sec. 7, p. 221.)

3. Again, by " an act to provide for the sale of certain property of the State of California, within the water-line front of the City and County of San Francisco," approved April 26th, 1858, all of the streets mentioned and referred to in the said Act of March 26th, 1851, to the full extent of said streets, and the streets as laid down on the map or plat made by J. J. Gardiner, mentioned in sec. 2 of the Act of 1858, are confirmed, established, and dedicated to public use as streets. All acts conflicting therewith are repealed. (Stats. of 1858, pp. 323, 324, 325, secs. 7 and 8.)

On the Gardiner Map the width of East Street is one hundred and thirty-seven and one-half feet. By virtue of sec. 8 of an Act of 1864, amendatory, etc., of an Act of 1863, providing for the improvement, etc., of the wharves, etc., approved March 5th, 1864, the width of East Street was made to be one hundred and fifty feet, by widening the same to the easterly twelve and a half feet. (Stats. of 1863–4, p. 143, sec. 8.) East Street is declared an open street and thoroughfare by Act of

the Legislature approved March 27th, 1868, entitled "An Act to authorize the Board of State Harbor Commissioners to lease a portion of the water front of the City and County of San Francisco." (Stats. 1867–8, p. 408, sec. 1.) All the original streets as laid down upon the map now in the office of the City and County Surveyor of the City and County of San Francisco, signed by C. H. Gough, Michael Hayes, and Horace Hawes, Commissioners, and by John J. Hoff, Surveyor, and generally known as the "Van Ness Map," and all other streets, lanes, alleys, places, or courts then dedicated to public use, or which should thereafter be dedicated to public use, lying between the Bay of San Francisco and Johnston and Larkin Streets, etc., were, on the 25th day of April, 1862, declared by the Legislature to be open public streets, etc. (See Stats. of 1862, p. 391, amendment to sec. 36 of the Consolidation Act.) When the Bay of San Francisco is mentioned in that section, in bounding the District upon one side, with Johnston and Larkin Streets as the other boundary, the "water front," as established by the Act of March 26th, 1851, is intended. (Stats. 1851, p. 307, etc. See *Dana* v. *Jackson Street Wharf Company*, 31 Cal. 121, where said act is referred to by a wrong date.)

By an amendment to that section, made April 4th, 1870, all the streets as laid down upon the map signed by George C. Potter and Thaddeus R. Brooks, and now in the office of the City and County Surveyor, and made official by the Board of Supervisors, as per Order No. 684, January 30th, 1866, and all other streets, etc., now dedicated to public use, are declared to be open public streets. (Statutes of 1869–70, p. 890; see amendment to that section, stats. 1871–2, p. 804.)

That section, as it has stood ever since the 25th day of April, 1852, has furnished ample authority to the Board of Supervisors to establish and ascertain the width and dimensions of all the streets, etc., therein referred to (including East Street). The city and county was authorized to establish the lines and grades of streets, etc., through a Board of Civil Engineers, but according to the original lines, etc. (Stat. 1862, p. 407, etc.) Order No. 684, above referred to, was adopted pursuant to that

statute. The map therein referred to is in the office of the City and County Surveyor. (See Order 684 in Municipal Reports of 1866, p. 384, etc.) East Street is laid down on all the city maps.

Dedication, by user or otherwise, is as easily proven against the Government as against an individual. (*Regina* v. *East Mark*, 11 Ad. & E. 876; *Phipps* v. *The State*, 7 Blackford, 512.)

If a street be dedicated by Act of Parliament, it is not necessary that it be adopted by the city; and even if dedicated by user, at common law, the city must keep it in repair. (*Rex* v. *Inhabitants of Leake*, 5 Barn. & Ad. 496, etc.)

4. Encroachments on public streets are public nuisances. (*El Dorado Co.* v. *Thos. Davidson*, 30 Cal. 520; *Wetmore* v. *Tracy*, 14 Wend. 250; *Hart et al.* v. *Mayor, etc. of Albany et al.* 9 Wend. 571; *Denning* v. *Roome*, 6 Wend. 651; *Gunter* v. *Geary et al.* 1 Cal. 467; *Robbins* v. *Chicago City*, 4 Wall. U. S. 657; *Vale* v. *Bliss & Davis*, 50 Barbour, 358; *Nevens* v. *City of Peoria*, 41 Ill. 503; *Attorney-General* v. *Cambridge C. Gas Co.* Law Rep. 6 Eq. 282; *Wales* v. *Stetson*, 2 Mass. 143.)

5. No length of time will legalize a public nuisance. (*Folkes* v. *Chads et al.* 3 Doug. 340–3; *Voght* v. *Winch*, 2 Barn. & Ald. 662, 671.) And that it is only by Act of Parliament that a public right in a navigable river can be determined. (*The King* v. *Montague*, (6 Geo. IV) 4 Barn. & C. 598, 602, 605.) And also that a public right in a navigable stream can only be determined: 1st. By Act of Parliament. 2nd. By writ of *ad quod damnum*, and an inquisition found thereon by a jury. Or, 3rd. By natural causes, as by the receding of the sea, etc. (*Mills* v. *Hall & Richards*, 9 Wend. 315; *Weld* v. *Hornby, Clerk*, 7 East, 199, 200, and new edition, vol. 4, p. 95; *Dygert* v. *Schenck*, 23 Wend. 445, 447; *Knox* v. *Chaloner*, 42 Maine, 150.) And that the remedy against a public nuisance by abatement is in all respects concurrent with that by indictment. (*Penwick* v. *Morris*, 3 Hill, 621.) And that the nuisance may be abated at common law, or may be indicted. (Russell on Crimes, vol. 1, page 330; *People* v. *Cunningham et al.* 1 Denio,

524, 536; *Commonwealth* v. *Upton*, 6 Gray, 473; *City of Philadelphia* v. *The Phila. & R. R. R. Co.* 58 Penn. 253.) The Board of Supervisors of the city and county are authorized to direct, etc., the summary removal of nuisances and obstructions in the streets, alleys, highways, and public grounds of said city and county, and to make regulations therefor. (Stats. 1863, p. 540, sec. 1, par. 2. And the same statute, in Municipal Reports of 1869–70, p. 500.)

6. At common law a common nuisance may be abated by any of the King's subjects. (Blackst. Com. book 3, p. 5.) And they may cut down a gate erected across the public highway. (Cro. Car. 184.) So of a house built across a highway, etc. (Blackst. Com. book 3, p. 5, note 6; 2 Salk. 458; *Gunter* v. *Geary et al.* 1 Cal. 462.) The Court held that if the erection of Gunter was a nuisance, the defendants were justified in removing it, and yet the power to remove a nuisance summarily was not expressly given by statute in the charter of the city at that time, either in 1850 (p. 223) or in 1851 (p. 357). The statute of this State defining what are nuisances and prescribing a remedy by action does not take away any common-law remedy in the abatement of nuisances which the statute does not embrace. (*Stiles et al.* v. *Laird*, 5 Cal. 120.) Any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance, may bring an action, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered. (Sec. 249 Practice Act.) And the obstruction upon a street may be removed, and the nuisance thereby created abated, by action in the name of the People of the State, by the Attorney-General on the relation of any citizen of the State. See *McCauley* v. *Weller*, 12 Cal. 500, etc.; Crittenden's brief, where the subject is ably discussed; 2 Smith's Leading Cases, 180 *et seq.* title "Easement," where it is clearly shown that a highway is for the free use of all the King's subjects, and that the remedy is by proceedings in the name of the King. (Practice Act, sec. 310; Code of Civil Procedure, sec. 803. See, also, *Clark* v. *Saybrook*, 21 Conn. 326–7, opinion of Storrs, J.)

In cases of public nuisances upon streets, as by placing ob-

structions thereon, the remedy for the Crown is either by information of intrusion at common law, or by an information at the suit of the Attorney-General in equity. (Story's Eq. Jur. secs. 921, 922.)

A dedication by act of the Legislature, or of a Common Council, is an exercise of governmental powers, and not those of a mere property holder.

It was by legislation, in the strict sense of the term, that the dedication was made, and only by legislation could the public franchise be destroyed. (*McCracken* v. *The City of San Francisco*, 16 Cal. 620, 621.)

7. As to East Street, north of Market: *People ex rel. Jacobs* v. *Kruger*, 19 Cal. 411; *People ex rel. Burr* v. *Dana*, 22 Cal. 11. This last case is a good authority to show that East Street, from Market to Folsom, existed in 1851. (Stats. 1851, p. 313, chap. 49; Stats. 1858, p. 323, chap. 337.)

As to the law of streets, etc., as to the right to close the same, see *Pumpelly* v. *Green Bay and Mississippi Canal Co.*

It is now settled that a Court of Equity may take jurisdiction, in cases of public nuisance, by an information filed by the Attorney-General; the jurisdiction seems to have been acted on with great hesitancy and caution. (*People* v. *Davidson*, 30 Cal. 379, 387; *Attorney-General* v. *Cleaver*, 18 Ves. 216; *Attorney-General* v. *Utica Ins. Co.* 2 Johns. Ch. 382; *Rowe* v. *Granite Bridge Co.* 21 Pick. 344; *Rowan's Executors* v. *Portland*, 8 B. Monroe, 240, and cases there cited. See, also, the opinions in the cases of *Weber* v. *The Board of State Harbor Commissioners*, 18 Wall. 57; and *Henshaw et al.* v. *Bissell*, 18 Wall. 225.)

By the Court, CROCKETT, J.:

That East Street was duly dedicated as a public street can admit of no serious doubt, on the facts established at the trial, and it is not denied that at the time of the commencement of the action the defendants were, and for a long time prior thereto had been, using a portion of the street as a lumber yard, obstructing the same with piles of lumber, and preventing the use of it by the public as a highway.

Apparently, the only defense seriously relied upon was the Statute of Limitations, the defendants claiming that they had been in the actual adverse occupation of the premises for more than ten years next before the commencement of the action. Assuming that the evidence proved such actual adverse occupation for ten years or more, it must be considered as the settled doctrine of this Court, since, the decision in *Hoadley* v. *San Francisco*, 50 Cal. 265, that no one can acquire by adverse occupation, as against the public, the right to obstruct a street dedicated to public use, and thus prevent the use of it as a public highway.

Judgment and order affirmed, and it is further ordered that the judgment herein be entered as of the day on which the cause was submitted.

Mr. Justice McKINSTRY did not express any opinion,