# WILLIAM H. BALDWIN, Jr. vs. FRANK W. TRIMBLE.

*Highways and Streets—Abandonment of Highway by the Public—
Equitable Estoppel to Assert Right to Abandoned Highway—
Specific Performance—Marketable Title—Encroachment on
- Highways—Mortgage or Deed of . Trust Barred by Limitations
—Adverse Possession.*

While an encroachment on a highway is a public nuisance which can
never grow by prescription into a private right, yet there are cases
where, when the use of a highway has been totally abandoned by
the public and private rights have grown up in consequence of such
abandonment, an equitable estoppel is created against the public to
assert a right to the use of the highway.

The right of a municipality to take possession of land dedicated to the
public for use as a highway cannot be barred by the possession of
such land by an individual, under a claim of right, for the period
of the Statute of Limitations where there has been no abandonment
by the public.

Two deeds conveying a tract of land across which a road ran granted
. the road itself as follows : " Including such part of said L. road as
may lie between said parcels of ground whenever O. street is opened
for travel and L. road is closed." O. street has been opened and
graded, and for more than twenty-five years the L. road has been
disused and abandoned as a highway and closed by buildings con-
structed across it, although not formally discontinued by the muni-
cipal authorities. There was no evidence that the road was ever
laid out by such authorities, or that it was accepted and kept in re-
pair by them. Upon a bill for the specific performance of a con-
tract by the defendant to purchase the property, it was objected that
the plaintiff under said deeds acquired no title to the L. road. *Held*,

1st. That the deeds conveyed all the estate grantors had in the bed of
the road, subject to the easement of the public so long as the road
remained opened, and upon the cessation of that easement from any
cause the title of the grantee to the bed of the road became absolute.

2nd. That since the municipal authorities opened streets parallel with,
and intersecting the L. road, and since the use of the road by the
public was discontinued and abandoned for more than twenty-five
years, there being no longer any occasion for its use as a highway
and houses having been built across it for a considerable distance,

the easement of the public in the road was abandoned, so that they are equitably estopped to reclaim it, and the title of the plaintiff to the bed of the road under his deeds is marketable.

A deed of trust, in the nature of a mortgage, executed thirty-five years ago, conveyed certain land to secure the payment of certain promissory notes, and provided that after payment of the same the trustee should hold the property in trust for the grantor. Power to sell was given to the trustee upon default in payment of the notes. No sale was ever made but the property was not reconveyed to the grantor. Every note mentioned in the deed has been barred by limitations for more than thirty years. *Held*, that since the right to foreclose a mortgage is barred by the lapse of twenty years and since there has been no recognition of the deed as a subsisting lien, the existence of such deed is not a cloud on the title of parties to whom the land was subsequently conveyed by the same grantor.

Appeal from a *pro forma* decree of Circuit Court No. 2, of Baltimore City.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Richard M. Duvall* and *Rignal W. Baldwin*, for the appellant.

*J. J Alexander* and *Carville D Benson*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The appeal in this case is from a *pro forma* decree, which dismissed a bill of complaint that had been filed to procure a specific performance of a written contract for the sale of land. The defence relied on in the answer, is that the appellant's title to a small portion of the property is not merchantable, and three reasons are assigned in support of this position. The property comprises nearly all of one-half of a city block in Baltimore, and fronts one hundred and sixty-two feet on Federal street, about three hundred and fifteen feet on Carter alley, including, in this distance, a road hereafter referred to; twenty-seven feet on Oliver street, and two hundred and fifteen feet on Barclay street, the southwest corner of the parallelogram formed by these three

streets and this alley being excluded. The appellant holds title under two deeds—one assigning the leasehold interest, the other conveying the reversion. In both deeds the entire parcel is conveyed in two lots of unequal size, which are separately described—the larger one as lying on the north side of Lanvale road, and the smaller one opposite the southeastern part of the larger, as on the south side of the same road. This Lanvale road ran in a northwesterly direction *between* the two lots, intersecting Carter alley and Barclay street, and diagonally crossing Oliver street; and in the various deeds relating to these two lots, that part of the road lying between them is, in terms, conveyed or attempted to be conveyed, in these words, immediately following the description of the lots themselves, viz : '' Including such parts of said Lanvale road as may lie between said parcels of ground above described, whenever Oliver street, aforesaid, is open for travel and said Lanvale road is closed.'' Oliver street has long been opened, graded and paved and is now a public thoroughfare, and for more than twenty-five years Lanvale road, though never formally discontinued as a highway by ordinance of the Mayor and City Council, has, in fact, been disused and abandoned as a road, and has actually been closed by buildings constructed across it for nearly its entire length, and that portion of it lying between the two lots in question has been obstructed and rendered impassable by the dumping of sand and earth thereon by the appellant, since his alleged acquisition of title to it under his deeds. It is now urged that the appellant acquired, under the conveyances alluded to, no title to the small portion of Lanvale road lying between his two lots ; and whether this is so depends on the construction that must be given to the deeds. And it is further insisted, that the title to the whole road is still in the public, because the road has never been lawfully closed as a highway, and that not having been so closed, no title, by prescription, to any part of it can be acquired by an individual. These are two of the reasons, or grounds, upon which the appellee relies to sustain his position that the title is not merchantable.

The remaining objection arises in this way : James Baynes
was, at one time, the owner of the leasehold in this prop-
erty.    In 1861, being indebted to sundry persons, he exe-
cuted a deed of trust, assigning the leasehold interest to
Charles E. Wethered to secure the payment of these debts.
The debts were evidenced by promissory notes, all of which
matured prior to October the nineteenth, eighteen hundred
and sixty-one.    The deed of trust provided for an extension
of eighteen months, so that all the notes had become due
by the latter part of April, eighteen hundred and sixty-
three. The deed stipulated that the trustee should hold the
property as security for the enumerated notes, and " after
the payment of the same, in trust for the said James Baynes ;"
and it contained a power, given to the trustee, to make sale
upon default in the payment of the notes and upon the
request of a majority of the creditors.    No sale was ever
made by the trustee under this deed, and he is now dead,
and it does not appear that any new trustee has ever been
appointed.    There is no evidence that any of these notes
remain unpaid, and about thirty-four years have now elapsed
since the note running the longest, with the eighteen months'
extension added matured, and more than thirty years have
expired since all the notes were barred by limitations.   The
trustee did not reconvey the property to Baynes, but Baynes,
on January the twenty-sixth, eighteen hnndred and seventy,
assigned the same leasehold interest to the  National Union
Bank of Maryland, by way of mortgage, to secure the payment
of borrowed money.    The debt to the bank not being paid
when due, a decree directing a sale was, under the terms of
the mortgage, signed on December the twenty-second,
eighteen hundred and seventy-one, and in January following
the leasehold interest was sold under that decree to the ap-
pellant, to whom the trustee, William Woodward, executed
a deed in January, eighteen hundred and seventy-three.
This is the deed under which the appellant acquired title to
the leasehold interest.    Subsequently, that is to say, on
the third of October, eighteen hundred and eighty-eight,

the reversion was sold under a decree in another equity proceeding, and on the twentieth of the succeeding month was conveyed to the appellant by Robert C. Thackery, trustee; and this is the deed under which the reversion passed to the appellant. It is, however, now contended that by reason of the outstanding deed of trust to Wethered from Baynes, dated in 1861, no title passed to the bank under the mortgage of 1870, and consequently that nothing was conveyed by the deed executed by Woodward, trustee, under and pursuant to the decree of foreclosure. This is the third objection relied on to show that the appellant's title is defective.

The two objections first stated, being somewhat interwoven, may be considered together.

The intention of the parties to an instrument, as gathered from its four corners, and from such foreign circumstances as may, under recognized rules of interpretation be invoked, must control and define its meaning unless some fixed, unbending canon of construction, or some settled and inflexible rule of property intervenes to frustrate or defeat that intention. This is such an obvious and elementary principle that neither discussion nor adjudged cases need be resorted to for its demonstration. Now, it seems perfectly clear that the grantors, in each of the deeds wherein the language, heretofore quoted, respecting the conveyance of Lanvale road has been used, did not, by employing that language, attempt the creation of an estate in fee to begin *in futuro*, as is insisted was the effect of the deed from Thackery, trustee, but, on the contrary, they undertook to transfer and convey all the estate which they possessed *in the roadbed*, subject to the easement in the public, so long as the road remained opened. By these conveyances no title was retained in the grantors, but their entire estate vested in the several grantees—the title to the bed of the road being held subordinate to the public easement, so long only as that easement should continue. Consequently, upon the cessation of that easement, from any cause, the title to the bed

of the road became as absolute as though no easement had ever existed. Giving to the language of the various deeds this, its manifest meaning, it becomes merely a question of fact as to whether Oliver street has been opened for travel, and a question of law as to whether, under the circumstances set forth in the record, Lanvale road has been closed. There is no dispute that Oliver street has been duly opened, graded and paved—the record is explicit on that subject—and we need not pause to say more on that feature of these objections. That Lanvale road is physically closed, and has been so for twenty-five years past, is equally free from doubt, but whether this actual obstruction of it, under the circumstances and for the length of time indicated, is a legal closing, binding on the public as an abandonment of the road, is what has been and still is denied.

This question is one by no means free from difficulty or unperplexed by conflicting decisions. There is a line of cases, proceeding upon the maxim, *nullum tempus occurit regi*, which holds that the rights of the public to a street or thoroughfare cannot be barred by non-user and that every act of asserted ownership, such as occupancy, hostile to the public use, is a nuisance which can never ripen into a private right by mere efflux of time. Whilst another series of cases, founded on the assumption that limitations run against the State or else that the maxim above cited does not apply to municipalities, holds that the same acts of adverse user and possession which would extinguish a private easement, will likewise destroy the easement of the public in a street or highway. The precise question, as we now have it presented, has not heretofore arisen in Maryland—at least our investigations, have not discovered, nor have counsel in their arguments referred us to, any adjudication thereon ; though there are three cases decided by this Court which explicitly hold that no right to maintain a public nuisance in the form of an *encroachment* on the highway can be acquired by prescription. To these cases we shall have oc-

casion to allude in a moment. In California, Louisiana, Mississippi, New Jersey, New York, Pennsylvania, and some other States, it has been held that the right of the public to the use of a highway cannot be lost, by mere non-user or lapse of time though coupled with occupancy by individuals for purposes other than and inconsistent with those of a thoroughfare; and the doctrine in its broad terms is maintained in many opinions of great force. *People* v. *Pape*, 53 Cal. 437; *Orena* v. *Santa Barbara*, 91 Cal. 621; *Thibodeaux* v. *Maggioli*, 4 La. Ann. 73; *Vicksburg* v. *Marshall*, 59 Miss. 563; *Jersey City* v. *Morris Can. Co.*, 12 N. J. Eq. 547; *Burbank* v. *Fay*, 65 N. Y. 57; *Com.* v. *Moorehead*, 118 Pa. St. 344. On the other hand in Arkansas, Illinois, Kentucky, Massachusetts, Michigan, Missouri, Vermont and other States the converse is asserted, and it is held that notorious and uninterrupted possession by a private individual under a claim of right of land dedicated to a city for public streets, for the period of the Statute of Limitations, will bar the city to claim its use. *Fort Smith* v. *McKibbin*, 41 Ark. 45; *Peoria* v. *Johnston*, 56 Ill. 45; *Dudley* v. *Frankfort*, 12 B. Mon. 610; *Cutter* v. *Cambridge*, 6 Allen, 20; *Gregory* v. *Knight*, 50 Mich. 61; *St. Charles Co.* v. *Powell*, 22 Mo. 525; *Cincinnati* v. *Evans*, 5 Ohio St. 594; *Knight* v. *Heaten*, 22 Vt. 481. This subject is ably and elaborately discussed and the adjudged cases are collected and classified in a learned and carefully prepared note to *Maire* v. *Kruse*, 26 L. R. A. 449.

The second of these conflicting propositions is not only not sustained by any adjudication in Maryland, but is directly in antagonism to what we apprehend to be the law of this State; whilst the first is wholly inapplicable to the case at bar for the simple reason that the title of the appellant to the road does not depend on prescription as against the public, but upon his deeds *and* the fact of an *abandonment* of the public easement whereby the rights of the public over the road were extinguished.

Whilst an *encroachment* on a highway is conclusively

settled in Maryland to be a public nuisance which can never grow by prescription into a private right (*P., W. & B. R. R. Co.* v. *State*, 20 Md. 157; *N. C. Ry. Co.* v. *Mayor, &c., Balto.*, 21 Md. 93; *Ulman* v. *Chas. St. Av. Co.*, 83 Md. 130), yet it may be true and in perfect harmony and accord with that doctrine, that cases, concerning public streets can arise of such a character and founded upon an actual and notorious *abandonment* of the highway by the public, that justice requires that an *equitable estoppel* shall be asserted even against the public in favor of individuals. In that event, such cases, as observed by JUDGE DILLON, "will form a law unto themselves," and will "not fall within the legal operation of limitation enactments. * * * * "There is no danger," he continues, "in recognizing the principle of an *estoppel in pais* as applicable to such cases, as this leaves the Court to decide the question, not by the mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require." 2 *Dillon Mun. Corp.* (2nd Ed.) sec. 433. And this proposition is supported by *Goodrich* v. *Milwaukee*, 24 Wis. 422; *Lane* v. *Kennedy*, 13 Oh. St. 42; *Com.* v. *Miltenberger*, 7 Watts, 450; *Logan Co. Suprs.* v. *Lincoln*, 81 Ill. 156; *Platt Co.* v. *Goodell*, 97 Ill. 84; *Simplot* v. *Chicago, M. & St. P. R. R. Co.*, 16 Fed. Rep. 350, and whilst not decided is implied in *M. & C. C. of Baltimore* v. *Frick*, 82 Md. 86.

Now, the facts in the record before us are sufficient, in our opinion, to create an *equitable estoppel* against the public to reassert a right to the use of Lanvale road; for the private rights that have grown up in consequence of an abandonment and total discontinuance of the road by the public, are of more persuasive force than those of the public. There is no evidence that this road was ever laid out by the municipal authorities, or that it was ever accepted by them or kept in repair at the public expense. The city has opened, graded and paved streets, some intersecting the road, some running parallel to it; and there obviously hav-

ing been for one quarter of a century no longer any occasion for its use as a highway, it was, if ever claimed by the public at all, finally *abandoned*, not because encroached on by abutting proprietors, but because no longer needed by the public.    Being no longer needed and no longer used it was actually closed to travel and permanent structures were built across its entire width for a distance of seven squares of its length.    Building across it went on for years and it is entirely closed on the west side of Barclay street—opposite these lots—by dwelling houses.    There seems to have been no objection to the erection of buildings across the road, and it would be inequitable in the extreme to permit the public to reassert a claim to the bed of a road, after having actually abandoned it altogether, and to subject every individual who has innocently and in good faith expended money in the construction of buildings upon it, to·an indictment for maintaining a public nuisance and to the penalty of removing the buildings themselves, when there is no longer the slightest need for the road—the wants and the convenience of the public having been long ago fully provided for by paved and graded streets.

If ever there was a case where the doctrine of equitable estoppel ought to prevail against the public it certainly is the case at bar ; and we accordingly hold—not that the appellant has acquired by prescription a right to that part of Lanvale road between his two lots—but that having title thereto under his deeds subject to an easement in the public and the easement having been abandoned so that the public are equitably estopped to reclaim it, his title to the parcels of the road claimed by him is merchantable.

There is nothing in this view that conflicts in any way with the cases in 20, 21 and 83 Md., hereinbefore referred to.    The first of those cases was briefly this : The P. W. & B. R. R. Co. in constructing its railroad crossed a county road below the grade of the latter and was required to build a bridge over its tracks to connect the two roads of the intersected county road.    The company built the bridge of considerably less width than the county road.    More than

twenty years afterwards the railroad company was indicted for obstructing the county road by having built the bridge too narrow, and it pleaded that the bridge had been erected and maintained for more than twenty years. But this Court held that the *narrowing* of the road by the construction of the bridge (which was a part of the road), was a public nuisance and that there could not be no right by prescription to maintain a public nuisance. The case in 21 Md. arose on a bill in equity to restrain the railroad company from laying certain of its tracks on some of the streets of Baltimore City without the sanction and consent of the municipal authorities. And the case in 83 Md. grew out of an attempt by an abutter on a thoroughfare to claim *part* of the *width* of the street.

These cases are very different from this, where the evident and notorious abandonment of the road by the public *as a road* and its physical closing with the knowledge of the municipal authorities, induced innocent parties to assume that it was no longer a highway, and upon that well-founded assumption, to expend money in making permanent improvements upon and across it. In the three cases just alluded to the highways were not abandoned by the public as highways—they were being openly used as such—and there was in each case simply an attempt, in spite of the public user, to claim by adverse possession a part of the *width* of the streets or road at the very time the streets and the road were being used continuously by the public as thoroughfares. These were cases of *encroachment* upon subsisting highways—not cases of *abandonment* of the highways at all. Here, however, private rights have grown up in consequence of and founded on an abandonment by the public, but in the other instances there being no abandonment whatever; in fact, on the contrary, a continuous assertion of right in the public by actual user, no private rights in conflict with the rights of the public could or did accrue. The acts complained of in 20, 21 and 83 Md. were public nuisances and so continued to be, and out of those nuisances no adverse individual rights arose.

We now come to the third and last objection and but a few words will be required to dispose of it.   The deed of trust dated in 1861 was in legal effect a mortgage to secure certain named debts.   It was nothing more.   Even a deed absolute ·on its face will be treated as a mortgage whenever necessary to give effect to the manifest intention of the parties to it.   *Baugher* v. *Merryman*, 32 Md. 185.

. There can be no doubt from the face of the deed that the obvious and single purpose of the parties to it, was to secure under it the payments of the debts particularly specified in it.   Notwithstanding, then, its form, it must be treated as the parties to it intended it should be interpreted, and, therefore, must be given the effect of a mortgage and must be held to be subject to all the conditions that would be applicable to it had it been a formal, technical mortgage. Now, every note mentioned in the deed has been barred by limitations for more than *thirty* years, and whilst that fact alone would not defeat a right to foreclose· a mortgage (*B. & O. R. R. Co.* v. *Trimble*, 51 Md. 111), still if the mortgage itself securing the notes is also barred, no decree can be procured upon it when a defence of limitations is made.   Twenty years have been adopted by the Courts of this State as the period which bars the right of foreclosure, and as *thirty* years have intervened between the maturity of the mortgage and now, without recognition of its being a subsisting lien, the· bar is absolute and complete.   *Cook et al.* v. *Glenn et al.*, 30 Md. 55; *Frazier* v. *Gelston et al.*, 35 Md. 298.

This disposes of all the objections that have been inter-posed to the appellant's title, and it will be seen from the views we have expressed that we are of opinion the title is merchantable.   It follows, then, that the *pro forma* decree must be reversed and the cause must be remanded that a decree conforming to this opinion may be passed.

*Decree reversed with costs above and* .
*below and cause remanded.*

(Decided April 1st, 1897.)