# UNITED FINANCE CORPORATION *v.* ROYAL REALTY CORPORATION

[No. 34, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was submitted on briefs to BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Nathan Posner*, for the appellant.

*William Edgar Byrd*, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This proceeding for the specific enforcement of a contract under which the Royal Realty Corporation agreed to sell, to the United Finance Corporation, seven lots of ground, six on Baltimore Street, and one on Mt. Olivet Lane in Baltimore City, was instituted by the vendor against the vendee in the Circuit Court of Baltimore City. The defense was that the vendor could not convey a marketable title to the land sold because a substantial part of it was dedicated to public use as highways of the City of Baltimore. The court rejected that defense, except as to one street not involved in this appeal, and decreed that the defendants specifically perform the contract. The appeal is from that decree.

In the course of the proceedings Edward V. Coonan and Helen B. Coonan intervened as defendants, and filed an answer, in which they asserted that they own land abutting on Baltimore Street, as located in the plat referred to *infra*, that that street is a public highway, and that they are entitled to have it remain open and unobstructed as such. It was stipulated by the parties that no decree in this case should affect or apply to that part of Baltimore Street described in their answer. They are not therefore parties to the appeal, and what is said in the course of the opinion has no application to their rights in that street.

The appeal presents a single question: Has the municipality any right to have these ways opened, which it may assert at this time against the owners of the fee in the land over which, if opened, they would pass?

That question arises out of these facts, which are not disputed: Acts 1870, ch. 99, provided that the County Commissioners of Baltimore County should appoint three persons to act as street commissioners, and directed that such street commissioners should have surveyed that part

of Baltimore County adjacent to the city, lying within lines drawn not less than one nor more than two miles from the city line, that they should lay out on the whole ground streets, avenues, and alleys in conformity with the streets of Baltimore City, and should return plats of such survey and locations to the county commissioners. Upon such return the county commissioners were directed to give notice by publication of such return of the plat and proceedings, informing persons interested that, in the absence of timely objection, the plat and proceedings would be ratified and confirmed. It further provided that, if objections were filed, the county commissioners might hear them and make any changes deemed proper in the location of the ways, and then in section 2 it continued: "and when so ratified shall be public streets, avenues, alleys and squares, and shall be opened, graded and paved as hereinafter provided." The "method" of opening the streets so platted there referred to is dealt with in section 3, which provided that, upon the application of the owners of a majority of the front feet of ground fronting on any way so located, the county commissioners should direct the street commissioners to open such way or ways, and it further provided that "the owner or owners of the ground over and through which any public street, avenue, square or alley may run, or any public square be located shall not be entitled to any damages for improvements thereon, unless such improvements shall have been made before the locating or laying out of such street, avenue, square or alley by said Street Commissioners." Section 4 provided for the award of damages and the assessment of benefits. Other sections of the act provided for grading and paving streets, alleys, and other ways so opened. Chapter 78 of the Acts of 1872 supplemented the Act of 1870, but changed it in no particular which could affect the consideration of the question involved in this appeal.

In due course street commissioners were appointed under the act, they made the survey required by it, and returned a plat showing the location of the streets, ave-

nues, squares, and alleys laid out by them, which was duly ratified and confirmed by the county commissioners on June 10th, 1873. Among the streets laid out on that plat were Baltimore Street, Hollins Street, Ninth Street West, and Tenth Street West. Of these streets Hollins Street, Ninth Street West and Tenth Street West were located in part on the land embraced in the seven lots described in the agreement of sale. The parties have stipulated that no decree in this case shall affect the status of Baltimore Street, so that the effect of its location need not be considered on the appeal.

Daniel Carroll of Duddington, on November 16th, 1829, conveyed the land of which these lots are a part to Levi Hoffman. Levi Hoffman devised it to his children, and they in April, 1878, conveyed to Charles Christopher Josenhans 6.05 acres of it, by a deed accompanied by a plat which was recorded. That deed called for the center of Baltimore Street and Tenth Street West. Other deeds in appellee's chain of title also called for those streets.

All of the land lies within that part of Baltimore County which was annexed to and became a part of Baltimore City in 1888.

The testimony showed that, when the streets were projected over the land involved in this proceeding, it was under cultivation, and that the owners continued to farm it as late as 1926, that, while the outlines of the streets may at one time have been indicated by markers, the streets were never opened but were cultivated as farm land, that the owners of the ground within the outlines of the projected streets paid taxes on it, that when, after 1900, plats were made for the use of the tax department of Baltimore City, they showed the land owned by the predecessors in title of the appellee, but there was nothing on such plats to indicate "any street going through at all," and that from the time of the ratification of the plat and proceedings by the County Commissioners of Baltimore County in 1873, nothing has been done by either the county or the city to open and establish as

public streets or highways on or over the lots described in the agreement of sale any of the streets located on the plat approved by the County Commissioners of Baltimore County, or described in the proceedings in which that plat was filed, but they remain now, as they were then, undistinguishable in use or appearance from the land adjacent.

Upon these facts the appellants contend that, though they are unopened, these projected streets are nevertheless public highways, (1) because they were declared to be such by the Act of 1870 and the proceedings had thereunder; (2) because they were dedicated as such by references to them in deeds from the owners of the land on which they were located.

The objects and purposes of the Act of 1870 were two; one, to plan and propose a system of streets, avenues, and alleys in that part of Baltimore County lying adjacent to the City of Baltimore, in order that, as the city grew and developed, the extension of its public ways into adjacent territory should, irrespective of its artificial boundaries, be made so as to secure a measure of uniformity in the highway system in the entire area affected by the development, whether in the city or the county. The accomplishment of that purpose was to be secured by the provisions relating to the survey, and the plat which the street commissioners were required to make and submit to the county commissioners. The second purpose of the act was to provide for the actual opening, paving, and grading of the ways located on the plat. The mere location of streets on the plat did not itself make them public highways, because it was beyond the power of the municipality to take from the owners thereof without their consent and without compensation the land within the boundaries of such streets. The statement in the act, therefore, that, upon the ratification of the plat, the streets, avenues, alleys, and squares located thereon should be public ways, did not mean that they would become public ways immediately upon the ratification of the plat, but that they would become public ways when

opened as such "as hereinafter" provided in the act. The second purpose of the act was accomplished by providing a method of opening the streets which adequately protected the constitutional rights of the landowners. The plat, and the proceedings ratified by the County Commissioners of Baltimore County in 1873, were no more than a tentative approval of a plan of street development, which should be followed if streets were opened, but which did not require that they actually be opened. Nor may it be assumed that it was intended that the plat should be beyond change or amendment, if changed conditions made such alterations expedient, nor was it so construed by either the city or the county, for changes have been made in the location of streets shown on the plat in some cases, new streets not shown thereon have been opened in others and, in still others, streets shown on the plat have never been opened or used. Until the streets were actually opened as provided by the statute, neither the city nor the county acquired any right to use the land embraced within their limits as public ways. They never were so opened, and the city neither acquired nor possessed any such right, unless under that provision of the act which provides that, in the event the street ever is opened, the landowner shall not be entitled to any damages for improvements made on the land over which one of the streets runs after the location of the street by the street commissioners. That provision imposed upon the land proposed to be taken for the purposes of the street a perpetual burden, for, under it, the landowner could never improve the land on which the street was located, except at the risk of losing the value of the improvement, if the municipality should ever exercise its option of opening the street. In this case nearly sixty years have elapsed since the final ratification of the plat filed by the street commissioners of Baltimore County, without the slightest evidence of any intent on the part of the municipality to open the streets located on the plat across or on the lots described in the agreement of sale. During much of that period the land in-

cluded in the streets projected has been farmed, and during all of it the owners have paid taxes on it.

Upon those facts, assuming, without deciding the point, that the State had the power to impose such a burden on the land without compensation to the landowner, any rights which the municipality may have acquired under the provisions of chapter 99 of the Acts of 1870, as amended by chapter 78 of the Acts of 1872, have been abandoned.

In 3 *Kent's Commentaries,* *448 it is said: "The mere nonuser of an easement, for twenty years, will afford a presumption of a release or extinguishment, but not a very strong one, in a case unaided by circumstances; but if there has been, in the meantime, some act done by the owner of the land charged with the easement, inconsistent with, or adverse to, the existence of the right, a release or extinguishment of the right will be presumed."

In *McQuillen on Corporations,* sec. 1735, the author states: "An abandonment does not result from mere nonuser, after a dedication is complete, unless a statute so provides, or from misuser, or delay in its improvement and use, or by a mere temporary abandonment of such use. To constitute abandonment some affirmative act is essential. * * * On the other hand, if the nonuser is accompanied by user by the dedicator or by third persons, inconsistent with the public use, the nonuser may show an abandonment. * * * And a municipality may relinquish its control over property dedicated to it for public use by an abandonment thereof, and this is so notwithstanding prescription does not run against a municipality as to land granted to it for the use of the public."

In *Town of Glasgow v. Mathews,* 106 Va. 14, 54 S. E. 991, 992, a real estate company in boom times laid off a paper city, with roads, avenues, streets, and squares located on a map. The map was recorded, the town was incorporated, the boom collapsed, the company became insolvent, and the town found itself in possession of miles

of imaginary streets, which never had been and probably never would be opened. In that situation the company rented many of these streets for agricultural purposes, and the town, to secure revenue for its needs, leased others for like purposes, and in the course of that use parts of the streets were fenced in. Some years later the town council had the fences destroyed and appointed commissioners to assess damages for opening the streets. Thereupon persons who had acquired the land over which these streets ran filed a bill to restrain the municipality from interfering with their fences, trespassing on their land, or condemning it. In connection with those facts the court said: "The general purpose of the dedication has failed, the property has been sold and purchased with a view to changed conditions, and these circumstances, coupled with the continuous failure of the public during all these years to open and maintain these streets, together with the systematic diversion of the land included in them to uses foreign to the dedication, all furnish unmistakable evidence of their abandonment.

"In the case of *Scott v. Moore,* 98 Va. 668, at page 687, 37 S. E. 342, at page 348, this court held: 'A party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts *in pais* and without deed or other writing, and a cessation of the use, coupled with any act indicating an intention to abandon the right would have the same effect as an express release of the easement without any reference to time.' Citing *Vogler v. Geiss,* 51 Md. 408."

The same principle was announced in *Baldwin v. Trimble,* 85 Md. 396, 37 A. 176; *Vogler v. Geiss,* 51 Md. 407; *Clendenin v. Md. Const. Co.,* 86 Md. 80, 86, 37 A. 709; *Baltimore v. Canton Co.,* 124 Md. 620, 93 A. 144; *Arey v. Baer,* 112 Md. 541, 76 A. 843. In *Baldwin v. Trimble, supra,* the relief granted the landowner was based upon the doctrine of equitable estoppel; in other cases similar relief has been on a finding that the easement had been extinguished by abandonment, and the land had reverted to the original owners or their privies

in title. *McQuillen, Mun. Corp.* sec. 1737, p. 620 and notes (621).

Elliott, in his work on *Roads and Streets,* sec. 1189, doubts whether the doctrine of equitable estoppel may be applied to such cases, but the weight of authority, indicated by the cases cited in note 9 to that section, supports the conclusion announced in *Baldwin v. Trimble, supra,* that it may be so applied.

But whether the basis for the relief be called equitable estoppel, or abandonment and reverter, is a mere matter of terminology of little relative importance, except to the verbal precisian. For in any case it involves the principle that one who, having an easement of way, whether public or private, suffers his right to lie fallow and unused for a long period of time, and throughout the period suffers the owners of the servient tenement not only to use it as though no such right existed, but actually acquiesces in such use by taking taxes or other charges assessed against it or profits therefrom as though no such easement existed, or by permitting any uses of the land inconsistent with the existence of the easement, may be held to have sufficiently manifested such an intention of abandoning the right as will estop him from asserting it. *Weber v. Iowa City,* 119 Iowa, 633, 93 N. W. 637; *Baldwin v. Trimble, supra.*

The conceded facts in this case conclusively manifest such an intention on the part of the municipality to abandon any rights acquired under the Acts of 1870 and 1872 and the plat and proceedings approved by the County Commissioners of Baltimore County, as to completely extinguish them (*Vogler v. Geiss, supra; Baltimore v. Canton Co., supra; Barnett v. Dickinson,* 93 Md. 258, 267, 48 A. 838), so that the municipality may not now assert them, either on the ground that it is estopped by its own conduct from doing so, or on the ground that it no longer has any rights to assert. *Baltimore v. Canton Co., supra; Vogler v. Geiss, supra.*

But the appellant relies upon references in certain deeds to the several streets located on the lots described

in the agreement of sale, which call for those streets, and to the fact that they are shown on a plat recorded among the Land Records of Baltimore County, as a dedication at common law.

The deeds were respectively from the heirs of Levi Hoffman, who then owned the land of which the lots were a part, to Charles C. Josenhans, dated April 8th, 1878, from the same grantors to John Shafer, bearing the same date, and from the same grantors to Felix McCurley, Sr., dated December 1st, 1885. The plat was filed with the deed to Josenhans, and was in conformity with the street plan in the plat filed by the street commissioners. A common law dedication of a way may affect two classes of persons, one, those who purchase land abutting on the way after the dedication, and two, the public. The rights of the two classes arising from an offer to dedicate may not always be the same, so that a dedication may be incomplete as to the public but complete as to the abutting owners who have bought land in reliance on the offer. *Elliott on Roads and Streets, chapter V.* Here we are concerned only in the rights of the public.

It is essential to any complete dedication of a way to a public use that there be an offer and an acceptance. A landowner cannot, by his act alone, create a public highway so as to charge the public corporation, or agency having jurisdiction over highways, with responsibility for the care and maintenance thereof, without the consent of the government acting through some authorized agency. *Elliott on Roads and Streets*, sec. 165.

Assuming that the offer may be implied from the deeds and the plat, the failure of the municipality to act on it for over fifty years, coupled with the use by the owners, of the land within the street lines, for purposes inconsistent with its character as a public highway, and the acceptance of taxes thereon, throughout that period, must be construed as a definite refusal to accept it. Such an offer must be accepted within a reasonable time. *Id.,* sec. 172; *Baltimore v. Canton Co.,* 124 Md. 620, 93 A.

144. What is a reasonable time depends upon the facts of particular cases, and is measured by no fixed rule. *Id.; Whittington v. Crisfield,* 121 Md. 387, 393, 88 A. 232; 18 *C. J.* 74. Cases in which the delay was held insufficient to require an inference that it has been too great to permit an acceptance are cited in 18 *C. J., Dedication,* sec. 70, note 7, and cases where it was held sufficient to require such an inference in *Id.,* note 10.

And while it may be conceded that the public interest in highways dedicated to a public use requires that a reasonable time be given for the acceptance of an offer to dedicate land to such use, because the need for additional highways in the particular locality, especially in urban or suburban neighborhoods, while not immediate, may likely arise at some indefinite time in the future, nevertheless, where for more than fifty years neither the governmental agency having jurisdiction of highways, nor the public, have made any move to accept or to use the land as a highway, but throughout the period the owner has used it as his own for purposes inconsistent with its character as a highway, and has paid taxes on it, it must be assumed that the offer has been refused, and that the public has no longer any interest in it. *North Beach v. North Chesapeake Land & Imp. Co.,* 171 Md. 191 A. 71.

It follows that neither the City of Baltimore nor the public has any right or interest in, to, or against any part of the land described in the agreement of sale made by the parties to this suit, which may now, or hereafter, be asserted.

The decree from which this appeal was taken will therefore be affirmed.

*Decree affirmed, with costs.*