Morris and Essex Railroad Company v. Prudden.

Same appellants, and THE ATTORNEY-GENERAL, *ex rel.* STICKLE and others, respondents.

1. The remedy by indictment being so efficacious, courts of equity entertain jurisdiction over public nuisances with great reluctance, whether their intervention is invoked at the instance of the Attorney-General, or of a private individual, who suffers some injury therefrom distinct from that of the public.

2. Where an ample remedy for an invasion of the public right by indictment exists, a court of equity will not interfere by injunction at the instance of the Attorney-General, unless in case of a pressing necessity to relieve the public travel from immediate and serious inconvenience.   An allegation that the laying of a second track of a railroad in the street of a town will have a tendency to depreciate the value of the property of the relators, and cause them great and irreparable injury by reason of the narrowing of the street, and also by reason of the increased annoyance that will be caused by the running of trains, and the danger to their buildings from proximity to such track, in the absence of any allegation of pressing necessity to relieve public travel from immediate and serious inconvenience, will not warrant the granting of an injunction on an information filed by the Attorney-General as a representative of the public.

3. The owners of several and distinct lots of land, having no common interest, cannot join in a bill to enjoin a nuisance common to all, where the grounds of relief are a special injury to each one's property.   An information filed in the name of the Attorney-General on the relation of such

Morris and Essex Railroad Company *v.* Prudden.

owners, will not, therefore, be considered as a bill filed in their behalf, where the case disclosed is not such that relief can be afforded at the instance of the Attorney-General.

4. A court of equity will not enjoin an offence against the public at the instance of an individual, unless he suffers some private, direct, and material damage beyond the public at large, as well as damage otherwise irreparable. Mere diminution of the value of his property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief.

5. An injunction ought not to be granted when the benefit secured by it to one party is but of little importance, while it will operate oppressively and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrong doer of the benefit of any consideration as to its injurious consequences.

6. Where a person entitled to a right in the nature of an easement encourages another, though passively, to acquire title and expend money on the assumption that that right will not be asserted, he will not be permitted in a court of equity to assert his right to the prejudice or injury of those who have been encouraged by his acquiescence, to expend money on the faith that his rights will not be exercised to defeat the just expectations upon which such expenditures have been made. Where such acquiescence has continued for the period of twenty years, or even less, in a court of equity his right will be extinguished by estoppel.

7. The Morris and Essex Railroad Company, by their charter, were authorized to construct a railroad to Morristown, sixty-six feet wide, with as many sets of tracks as they might deem necessary. Subsequently, the company were authorized to extend their road from Morristown, passing through the village of Dover. When the road was located to Dover, one McFarlan was the owner of lands in the village, which had previously been laid out in streets and squares, which had become dedicated to public uses; one of the streets, marked on the map as Dickinson street, was mainly coincident with an old turnpike road, which had, by act of the legislature, been declared to be a public road, and subject to vacation and alteration the same as if laid out as a public highway. In the spring of 1846 the company surveyed and located their railroad within the lines of Dickinson street, and graded the road-bed; and in 1847 laid rails thereon for a single track. Before the company commenced the extension of their road to Dover, McFarlan, as an inducement to make such extension, agreed to procure the right of way for them without cost, and to obtain the vacation of the public road over which the railroad was located. In June, 1848, the public highway over which Dickinson street, in part, was laid, was vacated according to law, and in December, 1848, McFarlan conveyed to the company a strip fifty feet in width, lying within but south of the middle line of Dickinson street, on which their single track was constructed. The company have

been in the peaceable occupation of this strip of land for a single track of their railroad for upwards of twenty years, and were engaged in constructing a second track on it, which was entirely south of the middle line of the street. An information was filed in the name of the Attorney-General on the relation of several of the owners of lots fronting on the north side of the street, and a bill was also filed by Prudden, who was the owner of a lot fronting on the north side of the street, which he purchased in 1839, to enjoin the laying of the second track: *Held*—

1. That the public right in Dickinson street having been extinguished by the vacation of it as a public highway, except for a distance of three hundred feet, and there being no allegation that the public travel over that fragment of the highway was impeded, the court would not interfere by injunction, at the instance of the Attorney General.

2. That Prudden, having acquiesced for more than twenty years in the use of that strip of land for railroad purposes, after it had been vacated as a public highway, and there being a clear and unobstructed road-way of twenty-nine feet in width for access to his premises, and the only special injury being the inconvenience of not being permitted to have wagons stand in front of his premises to load and unload, it was not a case for a court of equity to entertain jurisdiction of by injunction.

These were appeals from orders of the Chancellor for injunctions. The opinion of the Chancellor is reported in 4 *C. E. Green* 387.

*Mr. Vanatta* and *Mr. Shipman,* for appellants.

*Mr. Pitney,* for respondents.

The opinion of the court was delivered by

DEPUE, J.

The object of the bill of the complainant, Prudden, and of the information of the Attorney-General on the relation of Munson, Young, Roderer, and Stickle, is to enjoin the appellants from laying a second track of their railroad through Dickinson street, in the village of Dover, in the county of Morris. The complainant, Prudden, and the relators, are severally the owners of lots fronting on the north side of Dickinson street. The street is sixty-six feet wide. The new track is forty-one feet distant from the north side of the

street, and consequently beyond the *medium filum viæ*. The defendants are the owners of the lands on the south side of the street, opposite the premises of the complainant and the relators, and the new track proposed to be laid is entirely on that side of the middle line of the street.

The intervention of the Attorney-General is sought to be justified on the ground that Dickinson street is a public highway, and that the proposed construction of an additional track by the defendants, through the street, longitudinally, will be such an interference with public rights as to be a public nuisance. The complainant and the relators present their right to the relief prayed for in two aspects, the first of which is based on the public right, and the other upon their private rights, which they claim they became entitled to in the street, by virtue of the boundary of their conveyances thereon.

Dickinson street was never laid out as a public road. It is claimed to have become such by virtue of a dedication by Henry McFarlan, sen., who formerly was the owner of a considerable tract of land in and adjoining the village of Dover. This dedication is alleged to have been made by a survey and map made by McFarlan, about the year 1827, followed up by sales and conveyance of lots designated on said map, and described by referring to the streets laid down on the map.

The earliest map produced as an exhibit is one made by one Van Winkle, a surveyor in the employ of McFarlan, which bears date in March, 1831. A second map, made by the same person, while in McFarlan's employ, some time between the years 1831 and 1835, was also produced. Before either of these maps were made, the old Union turnpike road ran through the premises, on the line of what is now Blackwell street, to near the corner of Blackwell and Sussex streets; then, crossing the blocks between Warren and Sussex streets, and Sussex and Morris, diagonally, to Dickinson street; and thence, extending eastwardly, either on or near to the site of what is now Dickinson street. By an act of

2 y *

the legislature, passed on the 22d of February, 1841, the Union Turnpike Company was authorized to surrender all that part of its road situate between Morristown and the widow Love's house, in Dover, and the part so surrendered was thenceforth declared to be a public and common highway, to be amended, worked, repaired, vacated, or altered, in the same manner, in all respects, as though the same had been laid out as directed by "An act concerning roads." *Acts of* 1841, *p.* 34.

In the spring of 1846, the defendants surveyed and located their road through Dover, within the lines of Dickinson street, as designated on the map of 1831, and in the course of the same year graded the road-bed, and in 1847 laid rails thereon for a single main track. On the 7th of December, 1848, they procured a deed of conveyance, bearing date on that day, from the trustees of the McFarlan estate, in whom the fee in the streets was vested, for a strip of fifty feet in width, within the lines of the street, on which their main track was constructed, and on which they now propose to lay an additional track.

Before the defendants commenced the extension of their railroad from Morristown to Dover, McFarlan, as an inducement to the defendants to make such extension, agreed to procure the right of way for them, without cost to the defendants, and to obtain the vacation of the public road along side of, and partly within the lines of the route on which their railroad was located. Application was accordingly made to the Court of Common Pleas of the county of Morris for that purpose, and in June, 1848, surveyors of the highways, appointed by the said court, vacated all that part of the public road situate between the intersection of Sussex and Blackwell streets and the point of the mountain easterly of the village, and laid out a new road between those points over Blackwell street, in lieu of the road so vacated. What effect this extinguishment of the public right will have upon the rights of adjoining proprietors, where the *locus in quo* is a public street in a city or town, and the origin of the public

right is a dedication by the owner by a survey and map, and their title deeds call for streets as laid out and designated on the map as boundaries, is a question not settled in this state. It is adverted to by Justice Vredenburgh in *The State* v. *Snedeker,* 1 *Vroom* 80, as a grave question for future consideration, whether the legislature can, constitutionally, vacate a public highway on which an adjacent owner had built or made improvements upon the faith of its being and remaining a public highway, and whether such vacation would authorize the owner of the soil to close it up, and thus render his improvements valueless or greatly diminish their value.

If we adopt the doctrine generally recognized in the courts of sister states, that the grantee is entitled, as against his grantor and his assigns, to have the street, by reference to which his deed is made, kept open to its full width, either as an incident of the grant itself or by force of a covenant implied from the grant; *Parker* v. *Framingham,* 8 *Metc.* 260; *White* v. *Flannigain,* 1 *Maryland* 525; *Moale* v. *Mayor of Baltimore,* 5 *Ibid.* 314; *Transylvania University* v. *City of Lexington,* 3 *B. Mon.* 27; *In matter of Lewis street,* 2 *Wend.* 472; *Livingston* v. *Mayor of New York,* 8 *Ibid.* 85; *Wyman* v. *Same,* 11 *Ibid.* 487; it would necessarily follow that such right may be released by the act of the owner, and discharged or extinguished by an adverse possession for the period of time necessary to ripen a hostile possession into an indefeasable right.

The contingencies, above adverted to, of the vacation by the action of surveyors of the highways, of a public road, coincident in some parts with a street which is claimed to have become a public highway by dedication; and of a claim by adjacent proprietors of private rights, beyond the *medium filum viæ,* by reason of their boundary on a public street; and also of an adverse possession for the period of twenty years, whereby an extinguishment of such private rights is claimed to have been effected, have arisen in this cause. In view of the opinion of this court as to the propriety of re-

taining the injunctions under the peculiar circumstances of this case, it is unnecessary to express any opinion definitely upon these questions.

The remedy by indictment being so efficacious, courts of equity entertain jurisdiction over public nuisances with great reluctance, whether their intervention is invoked at the instance of the Attorney-General, or of a private individual who suffers some injury therefrom distinct from that of the public. "If," says Chancellor Kent, "a charge be of a criminal nature, or an offence against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct jurisdiction of this court, which was intended to deal only in matters of civil right resting in equity, or where the remedy at law was not sufficiently adequate; nor ought the process of injunction to be applied, but with the utmost caution. It is the strong arm of the court, and to render its operation benign and useful it must be exercised with great discretion, and when necessity requires it." *Attorney-General* v. *Utica Ins. Co.*, 2 *Johns. C. R.* 378. In *Attorney-General* v. *The N. J. R. Co.*, 2 *Green's C. R.* 136, Chancellor Vroom gives expression to the hesitancy of courts of equity in entertaining jurisdiction by injunction, of injuries of this nature. He says: "In cases of public nuisance, there is an undisputed jurisdiction in the common law courts by indictment, and a court of equity ought not to interfere in a case of misdemeanor, where the object sought can be as well attained in the ordinary tribunals." In the recent case of *Hinchman* v. *The Paterson Horse R. Co.*, 2 *C. E. Green* 75, the bill was filed by the owners of lots abutting on Congress and Market streets, in the city of Paterson, to enjoin the laying of rails for a horse railroad through those streets. In delivering his opinion, Chancellor Green expresses himself against the propriety of the interference of courts of equity to redress injuries of that description, in the following terms: "The injury which the owners of lots upon the street, suffer from obstructions in the street and impediments to traveling, is common to all

the public. In cases of unquestioned public nuisance, a court of equity will not interfere by injunction, except in cases of special and serious injury to the complainant, distinct from that suffered by the public at large." There must not only be a violation of the plaintiff's rights, but such a violation as will be attended with substantial and serious damage. *Bigelow* v. *Hartford Bridge Co.*, 14 *Conn.* 565. No remedy exists in these cases, by an individual, unless he has suffered some private, direct, and material damage beyond the public at large, as well as damage otherwise irreparable. *Irwin* v. *Dixion*, 9 *How.* 27. Mere diminution of the value of the property of the party complaining, by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief. *Zabriskie* v. *The Jersey City and Bergen R. Co.*, 2 *Beas.* 314.

It must not be overlooked that the defendants are engaged in a public work, by the completion of which the public interests will be greatly advanced. The injunction by which the progress of the work is arrested, must not only cause great injury to the defendants, but also is the occasion of great inconvenience to the public. In the case of *Allen* v. *Freeholders of Monmouth Co.*, 2 *Beas.* 68, it was held that although a bridge which was being erected over navigable waters without competent legislative authority, was technically a nuisance, yet as it was being built in good faith, and for the public benefit, a court of equity would not restrain its erection, even on an information by the Attorney-General in behalf of the public.

Whether the question is viewed in the aspect of a proceeding by the Attorney-General to protect the rights of the public, or of a suit by the complainant and the individual relators to protect their private rights, the most cogent reasons exist for a court of equity abstaining from drawing the controversy within its jurisdiction, until the rights of the parties are settled in a court of law. When the defendants located their road, it was with the understanding that the old turnpike road should be vacated, to permit the occupa-

tion of the road-bed by the defendants' railroad. A vacation of the old road from Sussex street, eastwardly, was shortly afterwards effected for that purpose. It is a disputed fact in the case, whether Dickinson street from that point, is not, in the main, coincident with the site of the old road. The map annexed to the return of the surveyors shows that the street and the highway were coincident in front of the premises of Prudden, and along the whole block on which his lot is situate. At that time a fence was standing across Dickinson street just beyond the line of Warren, leaving along that street a single block between Warren and Sussex street, less than three hundred feet in length, between the vacated public road and the extreme limit to which there is any pretence that there was an actually opened street. From the time the company laid their rails in 1847, until the present controversy arose in October, 1867, they have been peaceably in the occupation of the premises for their single main track, and there is some evidence of an user of the residue of the strip embraced in their deed for the purposes of their business. The additional track of the defendants is to be laid on a level with the street, or nearly so, and twenty-nine feet of clear roadway outside of the sidewalk will remain unobstructed to accommodate the public travel. It is not charged in the information that the public travel will be, to any extent, impeded by the new track of the defendants. It is true that it is charged in the information that the proposed track will narrow the street and impair its utility by reducing its width, but the information studiously avoids charging that the public travel is such over that fragment of a highway that the public interests will be, to any extent, impaired thereby. The gravamen of the complaint is that the laying of such second track will have a tendency to depreciate the property of the relators, and cause them great and irreparable injury by reason of the narrowing of the street, and also by reason of the increased annoyance that will be caused by the running of trains, and the danger to which their buildings will be subjected, from

Morris and Essex Railroad Company *v.* Prudden.

their proximity to said track. The allegation of special injury in the bill of Prudden is substantially the same, with the addition of an allegation of interference with complainant's passage to and from his premises; omitting all complaint as to danger to his buildings, from proximity to the track. With ample remedy for the invasion of any public right by indictment, and in the absence of any allegation of pressing necessity to relieve the public travel from immediate and serious inconvenience, the retention of the injunction at the instance of the Attorney-General is inconsistent with the principles upon which courts of equity employ process of injunction as a purely preventive remedy.

The relators being owners of several and distinct lots of land, and having no common interest, cannot join in a bill to enjoin a nuisance common to all, where the grounds of relief are a special injury to each one's property. A bill filed by them jointly, would be demurrable for misjoinder of parties. *Hinchman* v. *Paterson Horse R. Co.*, 2 *C. E. Green* 75. The information cannot, therefore, be retained and considered as a bill filed in their behalf.

With respect to the bill of the complainant, Prudden, as already observed, the highway in front of his premises was coincident with Dickinson street, and the highway has been vacated by the action of the surveyors of the highways. What rights the complainant acquired in the street beyond the *medium filum viæ* by his deed of conveyance, and the effect of the vacation of the previously existing highway, are questions proper for the determination of a court of law. It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call in aid the jurisdiction of a court of equity. *Robeson* v. *Pittenger*, 1 *Green's C. R.* 57. For a period of upwards of twenty years the defendants have been permitted to occupy the street for the purposes of their railroad track, under a claim of title, without remonstrance or complaint. The complainant acquired title to the premises, in relation to which he is aggrieved, in 1839. He was owner when the

track was laid in front of the premises. He has silently acquiesced ever since. The construction of an additional track, occupying a width of eleven feet, cannot add much to the inconvenience to which he was subjected by the occupation of the street by the single track. A clear and unobstructed roadway of twenty-nine feet is left to admit access to his premises. The retention of the injunction will be of little benefit to the complainant, while it will work serious annoyance to the defendants. An injunction ought not to be granted where the benefit secured by it to one party is but of little importance, while it will operate oppressively and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrong doer of the benefit of any consideration as to its injurious consequences. *Jones* v. *City of Newark*, 3 *Stockt.* 452. The defendants will not occupy, with the proposed track, any of the complainant's lands. For the contingent and consequential damages he may suffer from any unlawful interference with his enjoyment of his property, he has his remedy by action at law, whenever, and as often as loss or damage ensues; and if the use of a railroad in front of his premises becomes a nuisance, or the aggression proves to be a permanent injury, without an adequate remedy at law, then the court will be competent to administer equitable relief by injunction to prevent its continuance or for its removal. But a strong case must be presented, and the impending danger must be imminent and impressive, to justify the issuing of an injunction as a precautionary and preventive remedy. *Drake* v. *The Hudson River R. R. Co.*, 7 *Barb.* 508.

Regarding the merits of the complainant's title to relief in the light of any private right he may have acquired in the street beyond the middle line to have it kept open its full width, by reason of the boundary of his lands thereon, a grave question arises whether his right has not become extinguished by long acquiescence. The defendants, by their original charter, passed January 29th, 1835, were authorized to lay

out and construct a railroad or lateral roads not exceeding sixty-six feet wide, with as many sets of tracks and rails as they might deem necessary. The deed of conveyance they obtained from the trustees of the McFarlan estate was for a width of fifty feet at the graded surface, and was expressed to have been made for the purpose of enabling them to build, construct, maintain, and keep up their railroad thereon; and the public road which then laid over the premises was vacated to enable the company to use the premises for that purpose. On the faith of their title and of these preceedings, which were manifestly designed to remove all impediments in the way of their use of the premises for the purposes for which they were conveyed, the company located their single track. A double track was then within their corporate powers. It has now become necessary. To permit the complainant to interpose any supposed rights that that he or those under whom he claims, may have had beyond the limits of the premises of which he is the owner, would defeat the purpose of the conveyance to the defendants, and render nugatory the action of the surveyors in vacating the public highway. Where a person entitled to a right in the nature of an easement encourages another, though passively, to acquire title, and expend money on the assumption that that right will not be asserted, he will not be permitted in a court of equity to assert his right to the prejudice or injury of those who have been encouraged by his acquiescence, to expend money on the faith that his right will not be exercised to defeat the just expectations upon which such expenditures have been made. Where such acquiescence has continued for the period of twenty years, or even less, in a court of equity his right will be extinguished by estoppel.

The only special injury the complainant will sustain peculiar to himself, and distinct from that of the public in general, is in the inconvenience he may suffer in not being permitted to have wagons and vehicles stand in front of his premises, on which are a dwelling-house and a wheelwright shop, for

a sufficient time to load or unload. With a cross-street flanking his premises on each side, it does not appear that the exigencies of his business, or the convenient use of his property, so imperatively require that use of the street, that his being deprived thereof will cause an irreparable injury of such magnitude that a court of equity should entertain jurisdiction by injunction, when the question of right is in any doubt.

The order for an injunction is reversed in both cases.

. In Prudden's case, the vote was as follows :

*For reversal*—BEASLEY, C. J., CLEMENT, DEPUE, KEN-NEDY, VAN SYCKEL, WALES.    6.

*For affirmance*—BEDLE, WOODHULL, OGDEN, OLDEN.    4.

In the other case, all the judges voted for reversal except Judge OLDEN.