(57 Misc. Rep. 242.)

### CLODY v. SOUTHARD.

(Supreme Court, Trial Term, New York County. December, 1907.)

1. VENDOR AND PURCHASER—MARKETABLE TITLE.

   A right of way reserved in deeds more than 50 years ago is not a valid objection by a vendee to title of real property tendered him under contract of sale, where it fell into disuse some 30 years ago, and for over 21 years the property has been fenced by the vendor and held in hostile possession, against which no claim of right has ever been asserted.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 247.]

2. SAME—UNSATISFIED MORTGAGE.

   Where a mortgage was given on a sale to secure the price, except a small payment down, and the executors of the purchaser, after his death, by a power in his will, conveyed the property back to the mortgagee in satisfaction of any liability of the mortgagor, that the mortgage had been undischarged is no valid objection to the title.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 238–244.]

3. EXECUTORS—SALE UNDER POWER IN WILL.

   Where executors were empowered by will to sell the real estate of testator, and the estate was insufficient to pay his debts, and the mortgagee threatened to foreclose, and a judgment of deficiency was possible, a conveyance of the mortgaged property to the mortgagee, where only a small part of the price had been paid, was a valid exercise of the power.

Action by one Clody against one Southard to recover money paid on a contract for the purchase of real estate. Complaint dismissed.

Bassett, Thompson & Gilpatric, for plaintiff.
New & Gilchrist, for defendant.

McCALL, J. On the 22d day of May, 1906, the defendant in this action, being then the owner in fee of certain premises situate in

the town of Babylon, Suffolk county, in this state, entered into a written contract with one Charles H. Shaw for the sale of same. The purchase price expressed in the contract was fixed at $400 per acre, and the amount of acreage was to be determined by a "survey as agreed." Of the purchase price $250 was to be paid on signing contract, and this amount actually passed between the parties when the contract was signed. On the 24th day of May, 1906, by an instrument in writing duly executed, Mr. Shaw, the contractee referred to above, assigned all his right, title, and interest in said contract to the plaintiff herein. By the provisions of the contract the title was to close at the office of Mr. Shaw, No. 277 Broadway, on August 20, 1906, but on that date Mr. Southard, in writing, agreed to adjourn the said closing "until one week after a correct survey of this property shall have been delivered to Mr. Clody." Whether or not this survey was produced does not matter, because the deed never passed; Mr. Clody rejecting the title and refusing to perform. And it is stipulated upon the record:

"That the plaintiff duly raised objections stated in the bill of particulars during the time that the title was being examined, and refused to take title because of these alleged defects, but was otherwise ready, able, and willing; that the defendant offered to give and tendered a full covenant warranty deed, but the plaintiff refused to take, claiming the defendant could not give a deed free and clear of all incumbrances, as the contract called for."

The asserted defects in title and which are offered by the plaintiff as a justification for his rejection of title and for the judgment he prays for in this action are, first, the right of way reserved in deed Smith to Minturn, and again in deed Jackson to Minturn, is still an existing easement burdening the property under consideration, and hence a cloud and an incumbrance that prevents the defendant from transferring a title free and clear; secondly, that there is outstanding and open of record a mortgage, Brown to Searing, which represents an incumbrance that prevents the defendant from complying with the terms of the contract; and, thirdly, there was an invalid exercise of the power of sale of the executors of Alex. S. Brown, deceased, when they transferred the title to these premises to Rachel J. Searing by deed which forms a link in the chain of title to these premises.

As to the first claimed defect, it is true that back in 1853 the deeds which transferred the title to this land specifically refer to a right of way reserved, and the record in this case presents present day proof that there was at one time something more or less tangible in a way across this plot, but it is practically and conclusively demonstrated to my mind that, however slight the use thereof in early years, it absolutely fell into total disuse more than 25 years ago, and certainly for over 21 years has been held by the present owner intact, fenced in, and by open hostile possession against which no claim or right of any character has ever been asserted. Indeed, a part of the proof offered would lead to a proper inference that actual releases were executed to relieve the land from the burden of this rather mythical easement as far back in the record of title as the time of Mrs. Searing's holding in the year 1871. And this inference is more strongly fortified in its deduction from the fact that not an instrument in the chain of title from this date (1871) makes the slightest reference to it. But, how-

ever, without laying great stress upon that, it would be an outrageous stretch of the imagination that in a plottage of over 30 acres, because at some place therein there is to-day revealed a wagon track overgrown with grass, and but illy defined in outline, to spell therefrom the existence of an old road that carries this easement at that particular spot or to give the claim any semblance of substance; and my judgment is that the claimed defect is without merit of any kind, and does not justify a rejection of this title.

The remaining grounds taken by plaintiff can be disposed of together, as one in a measure involves the other. Rachel J. Searing at one time owned the premises and sold same to Alexander S. Brown, who died owning the fee of same. At the time of the transfer to Brown he executed back to Mrs. Searing a purchase-money mortgage of $2,400; the total consideration for the sale being $2,500. It will be observed that the actual amount of Brown's investment was but $100, plussed by the obligation he created by the execution of the mortgage. At his death his will was probated and a clause therein provides:

"I hereby empower my executors to dispose of the remaining part of my real estate and unmovable property at the time they shall think most proper for the best interest of the legatees hereinafter named and to collect my personal property."

The proof shows that Brown left practically no personal property, that his estate did not amount to enough to pay his debts, and that the mortgagee above referred to demanded her money and threatened to foreclose. With an asset of this character, which only represented an investment of decedent's capital to the extent of $100, can it now be gainsaid that these executors, prompted by their judgment that it would be for the best interest of the legatees to avoid litigation and a possible deficiency judgment, could exercise the control over and the disposition of the estate that the decedent clothed them with? I hardly think so, and deem it in my judgment to have been a valid exercise of a power given them. It will be seen how this, then, disposes of the question of the outstanding mortgage. The proof is that the executors of Brown reconveyed this property to Mrs. Searing, and that she delivered up the bond and mortgage. It, however, does not appear that a satisfaction piece of same was ever executed or filed in the proper office, and to all intents and purposes it is apparently open of record, but all the facts point unerringly to the conclusion that though open of record it is not a lien burdening the premises. By the conveyance back to Mrs. Searing (assuming that she never gave up the bond and mortgage, of which fact there is proof, however, in the record), she being at the time the holder of the mortgage, no evidence of assignment or transfer of same having been adduced, it is a fair and legal assumption that becoming repossessed of the fee while she was still the holder and owner of the mortgage, and never making a declaration contrariwise, the lesser title was merged in the greater and the subsequent history of the title as revealed by the record is strongly presumptive of that, for from the day of the retransfer, May 1, 1897, down through her life (she died owning the fee), in the transfer by her heirs to Denton or in the various mesne conveyances through the

chain until the title vested in Mr. Southard, the defendant, and up to the date he was on the stand testifying in this case, has the slightest claim or reference been made as to the existence of such a mortgage or for payments, either of principal or interest thereon, save as it has been asserted by this plaintiff as an existing lien which justifies the rejection of the title for all the reasons asserted. The complaint must be dismissed, and judgment is so rendered.

Complaint dismissed.