The Margate Company was a New Jersey corporation organized to develop and exploit a large tract of land in Margate. *Page 269 
On March 8th, 1912, the said company created a mortgage on the lands in question in this suit to Emma Maitz Doherty to secure the payment of the sum of $2,200.
On April 26th, 1916, Annie E. Hand recovered a judgment in the Atlantic county circuit court against the Margate Company for the sum of $5,005.50. On July 29th, 1916, this judgment was assigned to the defendant Raymond P. Read. On October 10th, 1916, the property previously levied upon by the sheriff on August 16th, 1926, was by him sold to said Read. The sheriff's deed was recorded October 24th, 1916. On April 11th, 1917, Carlton Godfrey and said Raymond P. Read, who constituted the law firm of Godfrey Read, incorporated the Exeter Land Company — they being the only stockholders (except the wife of Mr. Godfrey, who hand one share, manifestly for incorporating purposes). The company was admittedly a firm incorporation.
There can be no doubt but that Godfrey was the dominant factor in the partnership of Godfrey Read, and of the corporation Exeter Land Company, and he was very extensively interested in the Margate Company, being an officer therein and his firm being the legal representative thereof. The registered office of the Exeter Land Company was the office of Godfrey Read, and its registered agent was Carlton Godfrey. The sheriff's deed described the land deeded to Read as follows:
"all the right, title and interest of Margate Company in blocks 11 to 75, inclusive, block 78 and strip of 23.49 feet along southwest line of lot 21 in the division of Inside and Sand Hill Beaches from the south side of Ventnor Parkway to the Thoroughfare as shown on Margate Park plan in Margate City, N.J., on file in the clerk's office at Mays Landing, N.J.
"2. All the right, title and interest of Margate Company in lot 9 in the above division consisting of about 30 1/4 acres in Margate City, N.J.
"3. All the right, title and interest of Margate Company in lot 10 in the above division consisting of about 30 1/2 acres in Margate City, N.J."
It is also admitted that the land in question is within this description, and that Godfrey furnished the money for the consideration therefor. Read was only acting as a conduit *Page 270 
for the title, and on May 2d 1917, a conveyance was made by him and his wife and Carlton Godfrey and his wife to the Exeter Land Company, conveying inter alia the lands above described. This deed was recorded on May 5th, 1917.
Default having been made in the payment of the said mortgage, proceedings were taken to foreclose.
The searches obtained for the purpose of this foreclosure proceedings were made prior to May 5th 1917, the date of the record of the deed to the Exeter Land Company, and correctly evidenced the title to the land in question to be in Read. The bill, however, was not filed until May 16th, 1917, and Read was made a party thereto, but the pleader failed to include the Exeter Land Company as a party defendant. Evidently the precaution of having the search continued until or after the filing of the bill was not taken.
Service of the subpoena ad respondendum was acknowledged for the Margate Company and for Raymond P. Read by Carlton Godfrey in the name of Godfrey Read, solicitors.
No answer or other pleadings were filed by any defendant, and the cause proceeded to a final decree. A writ of fiere facias
was issued to the sheriff of Atlantic county, who proceeded to advertise and make sale thereunder. Sale was made to Emma E. Moitz Doherty, the complainant in said cause, and through mesne
conveyances the title became in Julia N. Ireland, one of the complainants, on December 21st, 1922. Ireland erected a dwelling on the property at a cost of about $27,000. She borrowed $15,000 on a construction mortgage. This mortgage was insured by a title company, which evidently overlooked the title of the Exeter Land Company, although it was then of record. It should be said that the title company now holds the mortgage so insured by virtue of an assignment from the original mortgage.
Ireland, after living in the premises for some time, conveyed them to F. Ernest Todd, Incorporated. This company entered into an agreement to convey to the complainant, who ordered title insurance. It was then discovered that although the Exeter Land Company had title at the time of filing the bill to foreclose, it had not been made a party. *Page 271 
I have no doubt that Mr. Godfrey's attention was called to the erection of this dwelling. The fact that the Margate Company had had, as the brief of the defendant says, "a checkered career," that Godfrey had been an officer and attorney of that company, that he had provided the consideration for the purchase of a judgment against it and for the purchase of the land, and its conveyance to Read and by him to the Exeter Land Company, and that without doubt he was trying to save from the wreck of the Margate Company any property possible, convinces me that the erection of a building such as was erected on this land could not have been without his knowledge.
A public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information. 21 C.J. 1130, 1131.
In New Jersey it has been held that he may be estopped by his silence when he knows or is informed that others are negotiating for rights and interests in property bound by his title of record.
All authorities are agreed that the general rule is that possession of real estate which is actual, open and visible occupation, inconsistent with the title of the apparent owner by the record, and not equivocal, occasional or for a temporary or special purpose is constructive notice to all the world of the rights of the party in possession. Wood v. Price, 79 N.J. Eq. 620,624.
One who stands by and silently permits another to make large expenditures in improvements on land under an honest belief that he is the rightful owner must be held to have acquiesced and to be estopped from being heard to complain. Bridgewater v. OceanCity Asso. et al., 85 N.J. Eq. 379.
The brief of the defendant concedes this rule, but insists that there has been no proof of knowledge on the part of the Exeter Land Company.
This is a question of fact to be determined by the court, and, as stated above, I find the fact to be that the president of the company had such knowledge, and that knowledge must *Page 272 
be imputed to the company — not necessarily because he was the president of the company, but because he was in effect the company.
The rule as stated in Pom. Eq. Jur. (4th ed.) § 818, is:
"If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent."
Professor Pomeroy proceeds:
"A most important application includes all cases where an owner of property, A, stands by and knowingly permits another person, B, to deal with the property as though it were his, or as though he were rightfully dealing with it, without interposing any objection, as by expending money upon it, making improvements, erecting buildings, and the like."
It is to be noted that no defense was made to the foreclosure proceedings, and in view of the facts as presented, the defendant is between Scylla and Charybdis. If Messrs. Godfrey Read knew Read was an unnecessary party to the proceedings, and that the Exeter Land Company was rightfully a defendant, and they permitted the purchaser at the sale (or her assigns) to expend large sums in the building heretofore referred to; the company which they represented cannot now be heard to complain.
In the event that they believed Read to be a proper party defendant, they waived all rights by failing to make a defense to the proceedings.
In either instance complainant is entitled to a decree. *Page 273