J. ADAM SCHWEITZER and ESTELLE SCHWEITZER, complainants-appellants,

*v.*

FRED H. ADAMI, defendant-respondent.

[Argued February 8th, 1933. Decided April 27th, 1933.]

*Mr. Earl A. Merrill*, for the complainants-appellants.

*Mr. Paul Q. Oliver*, for the town of Westfield.

The opinion of the court was delivered by

CASE, J.

This appeal brings up a decree in chancery dismissing complainants' bill for the specific performance of a contract

wherein the complainants agreed to convey by warranty deed free of encumbrance, and the defendant agreed to purchase, a lot of land one hundred and twenty-five by sixty feet in size, located at the northwest corner of Kimball avenue and Jefferson avenue in the town of Westfield, as shown upon a map entitled "Map of Buckingham Gardens, Westfield, N. J., Sept. 27, 1927." The facts are briefly presented by the bill, the answer and a short stipulation, and so far as they go are not in dispute.

In 1872 the then owners of the entire tract filed in the office of the clerk of Union county a map whereon the development was designated as "Westfield Park." On that map were delineated streets and avenues, with lots abutting thereon, as well as three certain areas marked, respectively, "park," "pleasure grounds" and "lake." It is asserted in the answer and tacitly admitted as a relevant fact that unidentified lots within the tract are owned by persons whose predecessors acquired title by deed reference to that map. In 1924 the town of Westfield, by ordinance, laid out a street called Jefferson avenue which corresponded in part, but was not identical in location, with Park avenue as delineated on the 1872 map. By the stipulated facts it appears that Park avenue was at the same time (1924) formally vacated by ordinance and that subsequently, in 1928, ordinances were passed by the town of Westfield vacating the park, pleasure grounds and lake as public places and releasing any and all public rights or easements therein. There is nothing before us, however, either by pleading, proof or stipulation to the effect that either Park avenue, the park or the lake was, or that the pleasure grounds were, ever accepted by the town; indeed we think that the fair inference from the stipulation is that at least the park was not. The map delineation of Park avenue contained a half-circle, on the southwesterly side of which lots were marked off and to the northeast of which lay the park lands. Amongst the lots bordering this curved portion of the avenue and facing the park lands were lots numbered 108, 113 and 118. The lot now in question, as marked for the information of the court on the 1872 map,

lies directly across Park avenue extending on the southwesterly into and embodying a part of lot No. 108, and on the northeasterly extending into and embracing a part of the park lands, and by comparison between the 1872 map and the later map entitled "Map of Buckingham Gardens," it appears that because of the rearrangement of lot lines and the change of street locations a part of lot 108 and a part of lot 113 now have no outlet to a street unless over what was formerly designated as Park avenue; and that passage southeasterly from the point on Park avenue on which these lands abut must be had over the lands now in question.

Defendant's answer expresses willingness to accept title if the title is marketable but disputes the marketability of so much of the land as is within the limits of Jefferson avenue as originally laid out (viz., Park avenue) upon the rule laid down in *Booraem* v. *North Hudson County Railway Co., 40 N. J. Eq. 557,* and of so much as lies within the park on the rule laid down in *Lennig* v. *Ocean City Association, 41 N. J. Eq. 606.*

Defendant presents no argument or brief in this court. The town of Westfield, apparently conceiving that it has an interest in the litigation, has filed a brief favoring the relief prayed for by the complainants.

In *Pound* v. *Pleister, 107 N. J. Eq. 577,* we passed upon a very like problem concerning another lot of land in the same tract and decided that the relation of the land to the park, pleasure grounds and lake areas was such that the opinion of this court in *Lennig* v. *Ocean City Association, supra,* was controlling. Counsel for complainants suggests no ground of distinction in this respect between the *Pound Case* and the case at bar. On the authority of that decision, if for no other reason, we come to an affirmance.

Another line of cases leads to the same result, discussion of which should perhaps be prefaced by a statement of complainants' argument; and this, aside from the assertion that in *Pound* v. *Pleister* we erred in our conception of the *Lennig Case*—an assertion from which we dissent—lies mainly in the contention that whatever easements in Park avenue

and in the park lands originally existed in favor of various lots within the tract, all such were merged in and extinguished by the acceptance, by the municipality, of the dedication effected by the filing of the map, and did not revive on the subsequent vacation by ordinance.

It was said in *Booraem* v. *North Hudson County Railway Co., supra:*

"Indeed, whenever a dedication as a public highway is effected—as it usually is—by means of conveyances to private persons by reference to a proposed street over other lands of the grantor, the private rights of the several grantees precede the public right, and are the source from which the public right springs. By such conveyances the grantees are regarded as purchasers by implied covenant of the right to the use of the street, as a means of passage to and from their premises, as appurtenant to the premises granted, and this private right of way in the grantees is wholly distinct from, and independent of, the right of passage to be acquired by the public. There is some controversy whether the private right of way in grantees holding by such conveyances is merged in the public right, when the dedication is consummated by public acceptance, or whether it is merely suspended thereby and will revive if the public right be afterwards abandoned; but the authorities agree that, by such a description, the grantees acquire a right of way as an easement appurtenant to their lands, although the words of grant indicate, also, a purpose to make the street a public highway, so far as private individuals can make it such by a dedication * * *."

In *Dodge* v. *Pennsylvania Railroad Co., 43 N. J. Eq. 351,* Vice-Chancellor Van Fleet (at p. *358*) makes specific reference to the foregoing language and adds:

"There are several adjudications made by courts, distinguished for the ability and learning of their judges, which hold that when the public right attaches, the preceding private right is thereby extinguished, and that if the public right is subsequently surrendered, the adjacent owner takes the land to the middle of the street, discharged of all right

of way. * * * The adjudications standing in conflict with this view are perhaps more numerous than those supporting it, but which of the two conflicting doctrines is most consonant with right reason and sound public policy, this court has no authority to decide. That question, like all other questions of legal title, falls within the exclusive jurisdiction of another tribunal."

Again Vice-Chancellor Leaming in *Coombs* v. *Atlantic City Railroad Co., 96 N. J. Eq. 709* (an affirmance by this court on the opinion below), quotes at length the language in the *Dodge Case.*

We are thus left with repeated expressions of doubt by our courts as to whether or not private rights in a proposed street become merged in the public right when the dedication is consummated by public acceptance and whether or not such private rights, if they do merge, are thereby extinguished or are merely suspended and revive upon subsequent abandonment of the public right. The situation therefore is such that the defendant is being asked to take a title over which there hangs a doubt even assuming, which is not proved, that there was a public acceptance of the dedication of Park avenue and the park lands; and over which there impends a more serious doubt if there was no such acceptance, for in that event it might well be argued that there was no merger.

We have given particular mention to the problem of lots numbered 108 and 113. There were other lots similarly situated on the same circular sweep of Park avenue and still other lots less closely affected. None of the owners of these lots are in court. We are not called upon to, and do not, pass upon the question of what, if any, rights such owners have over the lot now the subject of litigation or any part thereof. But we consider that the title of the land in suit is not free from reasonable doubt.

In suits by a vendor it is the uniform rule in this state to decline to decree performance of a contract to take title to lands unless the title is free from reasonable doubt. If there arises a reasonable doubt concerning the title, the court, with-

out deciding the question, regards its existence as a sufficient reason for not compelling the purchaser to carry out the agreement. Specific performance will be denied where such doubt exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that too where the title might in fact be declared good. *Van Riper* v. *Wickersham, 77 N. J. Eq. 232, 237.*

The decree below will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.

*For reversal*—None.