40 N.J. Super. 393 (1956)
123 A.2d 87
SAM PICCONI, AND LORETTA PICCONI, HIS WIFE, PLAINTIFFS,
v.
FRANCIS X. CARLIN, AND ADELAIDE M. CARLIN, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 22, 1956.
*394 Mr. Boris Seeber argued the cause for plaintiffs (Mr. Benjamin Yanowsky, attorney).
Mr. Harry Sears argued the cause for defendants (Messrs. Young & Sears, attorneys).
MINTZ, J.C.C. (temporarily assigned).
Plaintiffs in this action seek a return of their deposit under a contract for the sale of realty, contending that the defendants are unable to convey a marketable title as called for in said contract. The defendants contend that the premises are free from encumbrances and that they can convey a marketable title. They counterclaim for specific performance. Jury trial was *395 waived, and the cause submitted to the court, on a stipulation of facts, oral argument and briefs.
Defendants acquired title to the subject premises by warranty deed, dated August 10, 1951. The larger tract of approximately two acres, of which the premises in question are a part, is actually part of a large parcel of land subdivided by one George Fichtner, a predecessor in title. Said lands are shown on a map entitled "Property of George Fichtner" approved for filing by the governing body of the Town of Boonton on June 23, 1922, and filed in the Morris County Clerk's Office July 21, 1922, as Map Number 591, Case C. The subject premises are part of an area which appears on that map as a large unnumbered tract, as distinguished from the building lots which were numbered. In addition, there are paths or roadways which pass through the tract, defendants' dwelling under contract for sale to plaintiff, being actually constructed on one of said paths or roadways. It appears to have been the intention of the original subdivider that the large unnumbered tract be used as a park by residents in the development. This is confirmed by a sales brochure received in evidence, disclosing that intent on the part of the developer. No deeds of conveyances out of the development have any reference to the park, although conveyances have generally been made by reference to the filed map.
Approximately 80 houses were constructed on lots in the development apart from the park area. In addition, houses have been erected on the park area, including defendants' dwelling completed in 1951. There were no objections raised by any owners of property in the development to the construction on the park area, and none of said property owners have ever attempted to exercise any rights with respect to the premises in question in particular.
On July 16, 1940 the governing body of the Town of Boonton passed an ordinance vacating all public rights in and to the entire park area. The parties to this litigation have further stipulated that there were no outstanding public rights; that there were no instruments of record releasing *396 any outstanding private rights in the park area; and that the area in question has never been developed or used for park purposes.
From the undisputed facts it clearly appears that the park area was probably dedicated, but certainly not accepted by the municipality. N.J.S. 2A:14-12 in effect provides that whenever any municipality shall, after July 24, 1950, adopt an ordinance vacating park lands dedicated by map but not accepted by the municipality, then any person other than the owner of the fee title therein, claiming any easement in the lands vacated, shall be precluded from bringing an action to establish such easement, unless the action is commenced within two years after the effective date of such ordinance. It is unnecessary to pass upon the constitutionality of this statute. It is not applicable to the subject situation, since the ordinance vacating the public rights was adopted by the municipality on July 16, 1940. There is no statutory extinction of any existing private rights if any in the park area which includes the defendants' premises.
The decisional law in this State clearly establishes the principle that parties purchasing lots with reference to a filed map upon which is designated a park area acquire private rights therein in the nature of easements. In Bozarth v. Egg Harbor City, 89 N.J. Eq. 26 (Ch. 1918), the court in this connection stated that:
"The leading case touching the nature and extent of such private rights is Lennig v. Ocean City Association, 41 N.J. Eq. 606. In that case Justice Dixon, speaking for our Court of Errors and Appeals says: `Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares, or in other modes of a general nature calculated to give additional value to the lots delineated thereon, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portions so devoted to the common advantage otherwise than in the manner indicated. * * * From this doctrine, it of course follows that such distinct and independent private rights, in other lands of the grantor than those granted, may be acquired by implied covenant as appurtenant to the premises granted, although they are not of such a nature as to give rise to public rights by dedication. The object of the principle is, not to create public rights, but to secure to persons *397 purchasing lots under such circumstances those benefits, the promise of which it is reasonable to infer has induced them to buy portions of a tract laid out on the plan indicated.'"
See also Booraem v. North Hudson County Ry. Co., 40 N.J. Eq. 557 (E. & A. 1885).
In Schweitzer v. Adami, 113 N.J. Eq. 46 (E. & A. 1933), the court reaffirmed the rule laid down in Lennig v. Ocean City Association, supra. It further held that there have been repeated expressions of doubt by our courts as to whether or not private rights in a proposed street or park become merged in the public right when the dedication is consummated by public acceptance, and whether or not such private rights, if they do merge, are thereby extinguished or are merely suspended and revive upon subsequent abandonment of the public right. The court in the Schweitzer case, supra, was concerned with the effect of a filed map showing lots, streets, and certain areas marked respectively "park," "pleasure grounds" and "lake." Apparently none of these areas was accepted by the municipality, which passed an ordinance vacating all public rights therein. The court, in refusing to decree specific performance of a contract to take title to a lot situate partly on an avenue and partly on the park area, said:
"* * * The situation therefore is such that the defendant is being asked to take a title over which there hangs a doubt, even assuming, which is not proved, that there was a public acceptance of the dedication of Park avenue and the park lands; and over which there impends a more serious doubt if there was no such acceptance, for in that event it might well be argued that there was no merger.

* * * * * * * *
In suits by a vendor, it is the uniform rule in this state to decline to decree performance of a contract to take title to lands unless the title is free from reasonable doubt. If there arises a reasonable doubt concerning the title, the court, without deciding the question, regards its existence as a sufficient reason for not compelling the purchaser to carry out the agreement. Specific performance will be denied where such doubt exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that, too, where the title might in fact be declared good. Van Riper v. Wickersham, 77 N.J. Eq. 232, 237." *398 To same effect, Pound v. Pleister, 107 N.J. Eq. 577 (E. & A. 1931).
In Schweitzer v. Adami, supra, and Pound v. Pleister, supra, the court was not faced with factual situations indicating abandonment of an easement, or an estoppel to assert the same. The subdivision map was filed in the Morris County Clerk's Office on July 21, 1922. The stipulated facts indicate that approximately 80 homes have been constructed in the development apart from the park area. The adjoining land owners sat idly by and permitted the construction of defendants' dwelling in 1951 and the construction of other dwellings in the park area, without voicing any objection thereto, and without instituting any proceedings to enjoin any such constructions. Do such facts constitute an abandonment by purchasers of lots in the development of their private rights in defendants' property or estop them from asserting such rights? If so, can such abandonment or estoppel form the basis for a judgment on the counterclaim for specific performance?
In Rossi v. Sierchio, 30 N.J. Super. 575, 578 (App. Div. 1954) the court said:
"The right to an easement may be lost either through estoppel, Johnston v. Hyde, 33 N.J. Eq. 632, 643 (E. & A. 1881); Andrews v. Cohen, 221 N.Y. 148, 116 N.E. 862 (Ct. App. 1917); Restatement of Property, § 505; 2 American Law Property 8.100; or through abandonment, even though there has been no estoppel or adverse user for 20 years. Raritan Water-Power Co. v. Veghte, 21 N.J. Eq. 463, 480 (E. & A. 1869); Arlington Realty Co. v. Keller, 105 N.J. Eq. 196, 198 (E. & A. 1929); Nuzzi v. Corcione, 139 N.J. Eq. 339, 345 (Ch. 1947); Bergen Turnpike Co. v. North Bergen [Township], 95 N.J.L. 369 (Sup. Ct. 1920); Restatement of Property, § 504; cf. Fairclough v. Baumgartner, 8 N.J. 187, 189 (1951); Horner v. Stillwell, 35 N.J.L. 307, 314 (Sup. Ct. 1871); 25 A.L.R.2d 1265, 1279."
In 9 Rutgers L. Rev. 241, 242 (1954), the learned author in commenting upon the court's ruling in Rossi v. Sierchio, supra, to the effect that an easement could be terminated by *399 either abandonment or estoppel  although no sufficient proof was presented to justify a finding that the easement was destroyed by either of these methods  states that:
"Mere nonuser, in itself, however long continued, is insufficient to establish an abandonment. Whether there has been an abandonment is a question of intention to be ascertained from surrounding circumstances and it is generally a question of fact. Although some cases hold that an easement can be terminated only if the abandonment continues for the prescriptive period, 20 years, Judge Clapp, in the instant case, repudiates this rule. Although many cases discuss extinction by abandonment there are very few cases in which an abandonment has been found. In Nuzzi v. Corcione, 139 N.J. Eq. 339, 345, 51 A.2d 357 (Ch. 1947), the court infers that an easement acquired by prescription may be lost by nonuser. There should be no difference as to termination between an easement acquired by grant and one by prescription; in both cases the legal right should continue until terminated in any way in which an easement may be extinguished and no distinction between them should exist as to the time or method. Veghte v. Raritan Water Power Co., 19 N.J. Eq. 142, 156 (Ch. 1868) reversed on other grounds 21 N.J. Eq. 463 (Ct. Err. & App. 1869); 2 Walsh, Com. Real Property 680 (1947). Although there has been able criticism of the rule of abandonment, see 11 Col. L. Rev. 777 (1911), the rule is well established. Restatement, Property 504; 3 Powell, Real Property 494 (1952); 2 American Law of Property 8.96, 8.97 (1952); Note, 25 A.L.R.2d 1265 (1952). The proofs to constitute an abandonment must be clear, decisive and convincing. Fairclough v. Baumgartner, 8 N.J. 187, 84 A.2d 545 (1951). Title to land, however, may not be lost by abandonment. Byrne v. Byrne, 123 N.J. Eq. 6, 11, 195 A. 848 (Ch. 1938); affirmed 124 N.J. Eq. 273, 1 A.2d 464 (Ct. Err. & App. 1938).
An easement may be terminated by estoppel resulting from conduct of the owner of the easement. Whenever action is taken by the owner of the servient estate inconsistent with the continued existence of the easement and if such action is taken in reasonable reliance upon the conduct of the owner of the dominant estate, and the servient owner may be damaged by the restoration of the easement an estoppel exists. Restatement, Property 505; 2 American Law of Property 8.99, 8.100 (1952). There need not be any intention to abandon in such case, but there may be. Intention is judged by acts and often in cases involving extinction by estoppel the same evidence of intention to abandon is found as in cases of abandonment. Clark, Covenants and interests running with land 35 (2d ed. 1947). As to elements of estoppel, see Briscoe v. O'Connor, 119 N.J. Eq. 378, 384, 182 A. 855 (Ct. Err. & App. 1935)."
Also in 150 A.L.R., 651, under the caption of "Estoppel and Laches," the learned author states that:
*400 "Notwithstanding the general rules as to existence of a private easement of way in a highway or street which has been vacated or abandoned by the public, the landowner may be estopped to assert his easement in such vacated or abandoned highway or street, or he may lose the private easement by laches in the same manner as other private rights of way may be lost by laches."
The subdivision map was filed in 1922, but the area in question was never developed or used for park purposes. This stipulated fact in itself may justify a finding of abandonment of the private rights of others in the park area and more particularly over defendants' premises. It is not necessary for the court to predicate its determination upon such a finding. Suffice it to say that the evidence of abandonment fortifies the Court's finding that the lot owners in said development are forever estopped from asserting any private rights in defendants' property.
In the subject case, it is apparent that the defendants' dwelling was constructed in reasonable reliance upon the conduct of the owners of the easement. They sat idly by, voiced no objection and must therefore, be held to have acquiesced in same. They might reasonably have foreseen such reliance, and obviously the restoration of the privilege of use authorized by the easement, would require demolition of defendants' dwelling, thereby causing unreasonable harm to the defendants. All the facts required to effect an extinction by estoppel of an easement under section 505 of the Restatement of the Law of Property, have been clearly established. See also, Morris & Essex Railroad v. Prudden, 20 N.J. Eq. 530 (E. & A. 1869); Todd v. Exeter Land Co., 103 N.J. Eq. 268 (Ch. 1928).
In 57 A.L.R. 1538, the rule is stated to be that:
"A title apparently defective because of an outstanding claim in a third person, nevertheless, may be marketable where it clearly appears that the holder of the claim is estopped to assert it * * *."
In the oft-cited case of Barger v. Gery, 64 N.J. Eq. 263 (Ch. 1902), the court decreed specific performance of a contract for the sale of land. The title was held to be marketable. *401 The court there concedes the general rule to be as expressed by Professor Pomeroy as follows:
"`A specific performance will never be decreed at the suit of the vendor whenever the doubt concerning his title is one which can only be settled by a further litigation, or when the court can see that the purchaser will, with reasonable probability, be exposed to bona fide adverse claims on the part of third persons, and to the risk of litigation for the purpose of removing such claims.'"
The court went on to say that titles must be held marketable although dependent on the proofs of facts. In this respect every case must largely rest upon its own circumstances. It continued stating that:
"* * * We have the general rule that the purchaser has a right to a title which is reasonably safe,  reasonably safe against loss, and reasonably safe against attack. When the authorities speak of the hazard of litigation, to which the purchaser must not be subjected, it seems to me that they must refer to a hazard which is to be determined by the chance of successful attack as viewed by the court in the suit for specific performance. When, also, they speak of a `doubt' or a `supposed flaw' as affecting the saleability of a title, they must refer to the character of the doubt or flaw as the court views it, and not as it may be viewed by the indeterminate judgment of the real estate market. Some purchasers, guided by cautious counsel, will not accept a title against which the slightest possibility of doubt is suggested; and yet there is no title concerning which a possible doubt or the possibility of a future flaw cannot be raised. The authorities, I think, establish the rule as a safe one that a title dependent on a fact must be regarded as marketable when (1) the fact is so conclusively proved in the suit for specific performance that a verdict against the existence of the fact would not be allowed to stand in a court of law, and (2) where there is no reasonable ground for apprehending that the same fact cannot be in like manner proved, if necessary, at any time thereafter for the protection of the purchaser."
In Potter v. Lumsden, 93 N.J. Eq. 476 (E. & A. 1922), the court reaffirmed the principle of law expressed in Barger v. Gery, supra. The court decreed specific performance of a contract for the sale of land the vendor's title to a portion thereof being based on adverse possession. It held that when the marketability of title depends upon facts outside the public records, a vendee should not be forced to take the *402 title unless the necessary proofs are available to him when he may have future need of them. The doubt as to the validity of title must be reasonable. In that case there was clear evidence of actual possession in excess of the statutory period, and the Court further stated that it could see "no reasonable apprehension that proof of possession and occupancy, similar to that presented in this case, will not be available to defendant as it was to complainant."
In Casriel v. King, 141 N.J. Eq. 515 (Ch. 1948), affirmed on other grounds in 2 N.J. 45 (1949), the learned trial court decreed specific performance, although recognizing the general rule expressed in Van Riper v. Wickersham, supra. In commenting upon the rule that specific performance will not be decreed, where reasonable doubt concerning the title exists, the court, citing numerous authorities in support of its position, said:
"But all of these statements touching the character of the doubt which would excuse the vendee from his contract of purchase, are summed up in the statement `That the doubt must be a rationable doubt, or real and not fanciful.'"
In that case the defendant vendees refused to accept the title because of a restrictive covenant against the sale of liquor, which would subject them to possible litigation. The evidence showed that a similar restrictive covenant was inserted in practically all of the deeds from the common grantor; and that it was notoriously violated. The learned court concluded that if a suit for injunction was brought, the defense of estoppel would prevail. It cited with approval the apt expression of Vice Chancellor Backes in Salter v. Beatty, 101 N.J. Eq. 86 (Ch. 1927) that "`The remote possibility of an idle and vain suit is not within the category of being "exposed to the hazard of litigation" * * *.'" See also Hoffman v. Perkins, 3 N.J. Super. 474 (Ch. 1949).
In other jurisdictions the doctrine of estoppel has been applied to render a title marketable and to justify a judgment for specific performance.
*403 In the case of Baldwin v. Trimble, 85 Md. 396, 37 A. 176, 36 L.R.A. 489 (1897), the Court of Appeals of Maryland reversed the lower court's decision dismissing a complaint for specific performance. The facts in this case showed that a deed unto appellant conveyed to him certain parcels of land fronting on Lanvale Road, including such parts of Lanvale Road as may be between said parcels above described when Oliver Street is opened for travel and Lanvale Road is closed. Oliver Street had long been opened for travel, and structures had been built on the bed of Lanvale Road. Lanvale Road, however, had never been closed officially. The facts also showed that Lanvale Road had never been accepted by the municipal authorities or kept in repair at public expense. Respondent refused to complete his contract for the purchase on the ground that the public still had rights in Lanvale Road and that therefore the title was unmarketable. The court held that the facts were sufficient to create an equitable estoppel against the public, and decreed specific performance. Thus, Maryland's highest court, in the Baldwin case, supra, found an estoppel against a municipal corporation after having given its most careful attention to the fundamental principle that public rights to thoroughfares are never abandoned by mere non-user. See also, City of Brooklyn v. Copeland, 106 N.Y. 496, 13 N.E. 451 (N.Y. Ct. App. 1887); Clody v. Southard, 57 Misc. 242, 109 N.Y.S. 411 (Sup. Ct. 1907); Gailey v. Wilkinsburg Real Estate & Trust Co., 283 Pa. 381 (Sup. Ct. 1925).
In the instant case, there is no possibility of a successful attack upon the defendants' title. Any action instituted by the owners of lots that appear on the filed map, for a mandatory injunction to compel the removal of the dwellings erected on the park area and in particular for the removal of the defendants' dwelling therefrom, must surely fail. The presence of these dwellings in the park area, particularly that of the defendants, and the silent acquiescence of the said lot owners or their predecessors in title, to their construction forever estop these parties from asserting their rights of easement. The facts constituting the estoppel can *404 be proved in like manner in the future, for the protection of the purchasers if necessary. There is only the remote possibility of an idle, vain, suit against them. Such a suit is not within the category of being "exposed to the hazard of litigation."
The title to the premises in question is held to be marketable. Accordingly there will be a judgment of no cause for action on the complaint filed by the plaintiffs and a judgment on the counterclaim in favor of the defendants and against the plaintiffs, for specific performance. No costs to either party.